BOGGS, Circuit Judge.
 

 Municipal authorities demolished three condemned buildings owned by Harry and Joyce Javens after they filed for bankruptcy. Should the automatic stay provisions of the Bankruptcy Code have required those authorities to desist from that exercise of local might? The district court and bankruptcy court below held that the Code did not prevent the Cities of Hazel Park and Royal Oak from sending bulldozers to enforce their laws. After careful consideration of the applicable provisions of the Code, we agree, and affirm the order of the district court.
 

 I
 

 In November 1989, four years and four months before the first building fell, the City of Hazel Park filed a complaint in Oakland County Circuit Court against the Javenses and others having an interest in the Blue Dot Building, an apartment house located at 20841 John R [sic] in that city. Hazel Park alleged that numerous building and fire code violations made the building a public nuisance and a danger to the public health, safety, and welfare. In July 1992, after two and a half years of procedural maneuvering, Javens (as we shall for simplicity call the plaintiffs) and Hazel Park entered into a consent judgment. Under its terms, the Blue Dot apartments were to be vacated; Hazel Park was to give Javens a definitive list of violations (it would fill five single-spaced pages); and Javens was to correct them all within one year after the premises were vacated.
 

 A year and two months later, alleging that Javens had failed to comply with the consent judgment, Hazel Park filed a motion in the same state court for an order of immediate demolition. At a hearing on the motion, Javens claimed that he was unable to comply with the terms of the consent judgment because actions by Hazel Park employees had made it impossible for him to do so. Judge Nichols of the circuit court scheduled a bench
 
 *-1214
 
 trial for December 3, 1993. Javens succeeded in obtaining two adjournments, and requested a third. That prompted Judge Nichols to cancel the bench trial. Hazel Park refiled its motion for an order of immediate demolition, and, at a hearing held on January 19, 1994, Judge Nichols granted the motion. However, certain persons having minor interests in the building had not been notified of the motion, so the city had to refile the motion and serve all the parties. At a new hearing on February 2, Judge Nichols entered an amended order to the same effect.
 

 The Blue Dot Building was not the only Javens property that attracted Hazel Park’s attention. In another Oakland County Circuit Court action, the city sought a declaratory action that thirteen other houses owned by Javens were nuisances per se, and that the buildings should either be brought up to code or demolished. One of these houses, at 422 East George Street, suffered damage in a fire in June 1993. Hazel Park sought an order of immediate demolition for that building. After several adjournments, Judge Schnelz of the circuit court personally inspected the building; he still had the motion under advisement as of February 2, 1994.
 

 Meanwhile, in the nearby City of Royal Oak, a hearing officer for the city made determinations regarding yet another building owned by Javens, at 213 Euclid Street in that municipality. At a proceeding held on November 17, 1993, the officer found that
 

 [t]his house is in a seriously deteriorated condition requiring extensive building, plumbing, electrical and heating repairs. The owner, Mr. Javens, has had more than a year’s time to repair the building but has made no apparent effort to comply with the orders of the Code Enforcement Division and the house continues to be an attractive nuisance, deteriorating the neighborhood.... THEREFORE, IT IS ORDERED that the house, all accessory buildings, and deteriorated fencing be demolished. ...
 

 Five days later, Javens had the opportunity to show cause at a City Commission meeting why the order and findings of the hearing officer should not be followed. Javens spoke at length, and asserted that Royal Oak police officers had prevented him from repairing the building by keeping him and contractors from entering the premises. Mr. Krupp, a Code Enforcement officer, also testified, as did Mr. Sutton, a neighbor on Euclid Street; both spoke of the budding’s decrepit condition. Javens complained of having received inadequate notice and information about the nature of the hearing. Nonetheless, at the close of the hearing, the commission voted unanimously to affirm the hearing officer’s order of demolition, and to seek bids for the demolition of the house at 213 Euclid Street.
 

 Thus, at the beginning of February 1994, two buildings owned by Javens faced imminent destruction, and the same fate seemed possible for a third. Javens sought sanctuary in the Bankruptcy Code. On February 2, 1994, the same day that Judge Nichols entered his amended order of immediate demolition for the Blue Dot Building, Javens filed a voluntary petition in United States Bankruptcy Court for the Eastern District of Michigan.
 

 II
 

 Filing a petition under the Bankruptcy Code creates legal barriers that repel, at least temporarily, many legal attacks against the estate. The following statutory language creates these barriers:
 

 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
 

 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the ease under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
 

 (2) the enforcement, against the debt- or or against property of the estate, of a judgment obtained before the commencement of the ease under this title;
 

 
 *-1213
 
 (3)any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
 

 11 U.S.C. § 362(a).
 

 The legislative history of the Code explains the purpose of this protection:
 

 The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
 

 H.R. Rep. 95-596, at 340 (1978),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5787, 6296.
 

 The § 362(a) shield can repel actions by “all entities,” including governments. As one court explained, “the legislative history is clear that, in general, this [section] was intended to extend to governmental entities as well as private ones.”
 
 Penn Terra Ltd. v. Dep’t of Envtl. Resources,
 
 733 F.2d 267, 271 (3d Cir.1984).
 

 Some governmental attacks on the estate, however, penetrate the barrier. Pursuant to 11 U.S.C. § 362(b), the filing of a petition does not operate as a stay:
 

 (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power;
 

 (5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power;
 

 As the legislative history of the Code explains, “[t]hus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.” S.Rep. No. 95-989, at 52 (1978),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5787, 5838.
 

 The Code provides for no similar exception from any stays automatically generated against the proceedings described in the other subsections of § 362(a), including subsection (a)(3). Against such actions, the barriers are fully effective, unless and until overcome by a successful petition in the bankruptcy court for relief from the automatic stay.
 
 See
 
 11 U.S.C. § 362(d).
 

 Ill
 

 Javens notified Hazel Park and Royal Oak of his bankruptcy filing, and invoked the Code’s automatic stay provisions to save his condemned buildings from destruction. Hazel Park promptly filed a motion in the bankruptcy court “for a determination that the automatic stay of § 362(a) does not apply to the litigation initiated by the City of Hazel Park to correct building code violations or obtain orders permitting demolition of properties in which the debtors or debtors’ estate may have an interest.”
 
 In re Javens,
 
 No. 94-41069-G (Bankr.E.D.Mich. March 15, 1994) (order exempting Hazel Park from automatic stay). Javens opposed the motion by proffering evidence that the Blue Dot Building was not in fact a danger to the public, and by arguing that the bankruptcy court should preserve the estate by recognizing the stay. Javens also moved for an injunction against the city’s proceeding with the demolition, and for sanctions against the city for acts already committed:
 
 [1]
 
 he averred that Detroit Edison, at Hazel Park’s behest, had cut off electrical service to the Blue Dot Building, resulting in frozen pipes and related damage..
 

 The bankruptcy court granted Hazel Park’s motion, holding that “[t]he automatic stay does not prevent government from the exercise of police or regulatory power.... Hazel Park’s effort to require adherence to building codes or demolish property that may
 
 *-1212
 
 pose a threat to the safety and health of the community is clearly within the police or regulatory power of government. The exercise of this power is not barred by the operation of 11 U.S. Section 362.” The holding applied to both the demolition order already obtained, and the litigation under way against the second Hazel Park property.
 
 Ibid.
 

 On that very day, March 15, 1994, Hazel Park razed the Blue Dot Building. With his eye, no doubt, on obtaining § 362(h) damages for that act, Javens promptly appealed to the district court the bankruptcy court’s order declaring the stay inapplicable to Hazel Park.
 

 In early May 1994, Royal Oak sought an order from the same bankruptcy court declaring its actions against 213 Euclid exempt from the § 362 automatic stay provisions. Javens claims that he was not personally served with notice of the hearing on the matter, learned of it less than twenty-four hours before it occurred, and was represented not by counsel but by Joyce Javens, his wife, who was “completely unprepared and unfamiliar with the proceedings.” On May 10, the bankruptcy court entered an order declaring that “the City of Royal Oak[’]s actions regarding 213 Euclid are in fact exempt from the automatic stay provisions of 11 USC 362.” Javens frantically sought to obtain emergency injunctive relief in state court, but before Javens could succeed, the bulldozers arrived at 213 Euclid. As he had done with respect to the Hazel Park action, Javens appealed the bankruptcy court’s order of exemption to the district court.
 

 Hazel Park obtained an order from Judge Schnelz on May 20 to compel Javens to repair the building at 422 East George within ninety days. On September 7, 1994, Hazel Park apparently demonstrated to Judge Schnelz’s satisfaction that Javens had not complied with the May 20 order, and secured an order of immediate demolition. So the third budding fell.
 

 Meanwhile, the bankruptcy trustee moved on May 3, 1994 to dismiss Javens’s bankruptcy petition for failure to proceed in proper prosecution of the case. The bankruptcy court granted that motion on May 12. Javens moved for reconsideration. After a variety of motions and hearings, the bankruptcy court confirmed its dismissal of the case on August 3, 1994. Javens did not appeal that dismissal to the district court.
 
 [2]
 

 Javens’s appeals of the bankruptcy court’s two exemption orders proceeded in district court. He sought a reversal of those orders, and remand for a determination of damages resulting from violation by the cities of the automatic stays.
 

 The district court affirmed the bankruptcy court’s orders of exemption, agreeing that “the automatic stay does not prevent government from the exercise of police or regulatory power,” and holding that it was “axiomatic” that the cities’ actions enforcing its building and fire codes “are related to matters of public safety and health, and thereby well within their respective police and regulatory powers.”
 
 In re Javens,
 
 No. 94-CV-71142-DT (E.D.Mich. Feb. 28.1995).
 

 Javens timely appealed to this court. He was represented by counsel in connection with the order exempting Hazel Park, but represented himself in the appeal of the order exempting Royal Oak.
 
 [3]
 

 IV
 

 Javens has two main arguments:
 

 (1) If Javens’s bankruptcy petition caused an automatic stay to arise under
 
 *-1211
 
 either § 362(a)(1) or (2), the corresponding exceptions did not apply, because the cities were not legitimately exercising their police or regulatory power.
 

 (2) Javens’s bankruptcy petition caused an automatic stay to arise under § 362(a)(3), for which there is no police-power exception.
 

 The district court found that the cities’ actions, taken pursuant to their building and fire codes, as measures in furtherance of the public health, safety and welfare, were classic exercises of the police power, and thus were excepted by § 362(b)(4) and (5). In support of this conclusion, the cities cite
 
 Smith-Good-son v. CitFed Mortgage Corp.,
 
 144 B.R. 72 (Bankr.S.D.Ohio 1992) (actions related to city housing, nuisance, and fireprevention ordinances by their very nature are related to the public safety and health, and hence are exercises of the police power exempt from the automatic stay; by contrast, governmental actions primarily having a pecuniary purpose are not so exempt).
 

 Javens offers two arguments, against this conclusion: (A) the cities’ actions were not legitimately related to the public welfare, because the determinations that Javens’s buildings were unsafe were bogus; and (B) the cities’ actions were not exercises of their police power, because they were instead efforts to control the property of the estate.
 

 A
 

 Javens’s briefs, here and below, contain a litany of charges of unfair treatment at the hands of Hazel Park and Royal Oaks authorities, not to mention the Oakland County Circuit Court. The cities discriminated in their enforcement of the building codes, Javens says; they threw up obstacles to his compliance with the building codes; he received inadequate notice of proceedings; his evidence and legal arguments were ignored. Together, Javens claims, these affronts constituted a violation of due process which vitiated the determinations that the buildings were dangerous.
 

 Those determinations were not just unfair, Javens argues, they were inaccurate. He supplied the bankruptcy court with a description of extensive repairs he said he had already made to the Blue Dot, supported by an affidavit of his repairman and a structural engineer. The actions of Hazel Park, he alleges, were not based on the real condition of his buildings, but were illegal, oppressive, discriminatory, and a violation of due process.
 

 Javens argues that it was the duty of the bankruptcy court to consider these matters. “It was an abuse of discretion for the bankruptcy court not to inquire into the actual condition of the premises and the substance of the state court proceedings,” he maintains in his brief. “[T]he bankruptcy court had the power to determine that even the police power exemptions under 11 USC § 362(b)(4) and (5) can be stayed in the event that the actions of the governmental entities exercising their police power have been carried out in a discriminatory manner.”
 
 [4]
 

 Setting aside any assessment of our own of Javens’s claims that the state court proceedings were invalid, and that their conclusions about the dangerousness of the buildings were erroneous, we think his argument that the bankruptcy court should have inquired into these determinations before recognizing an exception to the automatic stay is foreclosed by the Supreme Court’s decision in
 
 Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.,
 
 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991). In that case, the debtor contended that an investigation being conducted by the Federal Reserve was beyond its regulatory powers, and thus was not an exercise of governmental powers that could be excepted from the
 
 *-1210
 
 Code’s automatic stay provisions. The Court rejected that argument:
 

 MCorp contends that in order for § 362(b)(4) to obtain, a court must first determine whether the proposed exercise of police or regulatory power is legitimate and that, therefore, in this litigation the lower courts did have the authority to examine the legitimacy of the Board’s actions and to enjoin those actions. We disagree. MCorp’s broad reading of the stay provisions would require bankruptcy courts to scrutinize the validity of every administrative or enforcement action brought against a bankrupt entity. Such a reading is problematic, both because it conflicts with the broad discretion Congress has expressly granted many administrative entities and because it is inconsistent with the limited authority Congress has vested in bankruptcy courts. We therefore reject MCorp’s reading of § 362(b)(4).
 

 Id.
 
 at 40,112 S.Ct. at 464.
 
 [5]
 

 This is not to say that bankruptcy courts are without power to prevent a governmental unit’s bad-faith exercise of its police or regulatory power against the estate. By creating exceptions for police and regulatory actions, “Congress removed local regulation only from the effect of the automatic stay; it did not eliminate the bankruptcy court’s power to enjoin the enforcement of local regulation which is shown to be used in bad faith.”
 
 In re National Hospital and Institutional Builders Co.,
 
 658 F.2d 39, 48 (2d Cir.1981).
 
 [6]
 
 However, the good faith of state and local officials “should be presumed, only to be rebutted by particularized pleadings made after investigation as required by Rule 9011 of the Rules of Bankruptcy Procedure and proof of the various forms of bad faith set forth in
 
 National Hospital.”
 

 [7]
 

 In re Beker Industries Corp.,
 
 57 B.R. 611, 627 (Bankr.S.D.N.Y.1986). Javens did, in fact, seek an injunction from the bankruptcy court to prevent Hazel Park from proceeding with the demolition of the Blue Dot Building. Although Javens submitted an affidavit from a contractor, William Wallace, alleging discriminatory and oppressive treatment of Javens by Hazel Park, we do not find the required particularized pleadings of bad faith in Ja-vens’s Motion for Damages and Injunctive Relief, J.A. at 158, or his supplemental filing,
 
 *-1209
 
 J.A. at 186. There is no indication in the record that the bankruptcy court ever ruled on Javens’s motion for an injunction and damages. Javens’s appeals are limited, by their terms, to the bankruptcy court’s orders exempting the cities from the automatic stay. Even if we were to treat the bankruptcy court’s orders as denials of Javens’s motion for an injunction, and this appeal as an appeal of that denial, the demolition of the buildings would render the case moot.
 

 Javens is not without recourse if the state and local authorities violated his rights. He has filed a lawsuit in Michigan state court alleging due process violations. A federal suit under 42 U.S.C. § 1983 might be another means of vindicating his rights.
 

 B
 

 Javens also argues that the cities were not really exercising their police or regulatory power; instead, he contends, the enforcement of their building and fire codes fell under the rubric of “controlling the property of the estate.” This characterization of the actions would confer one of two benefits on Javens. It could mean that an automatic stay was created under § 362(a)(3), which stays “any act to obtain possession ... or to exercise control over property of the estate,” and for which no exception is available. Alternatively, if the automatic stay were viewed as being created under § 362(a)(1) or (2), the demolition orders, as actions definitionally distinct from exercises of police or regulatory power, would not be excepted from the stay by § 362(b)(4) or (5).
 

 These arguments, in their extreme form, depend on the view that no logical intersection exists between the category of an “act ... to exercise control over property of the estate” and the category of an “action or proceeding ... to enforce [a] governmental unit’s police or regulatory power.” This, of course, is a false dichotomy. Many actions against a debtor taken under governmental police or regulatory power have the effect of controlling the property of the estate.
 
 Cf. MCorp,
 
 502 U.S. at 41, 112 S.Ct. at 464 (“It is possible, of course, that the Board proceedings, like many other enforcement actions, may conclude with the entry of an order that will affect the Bankruptcy Court’s control over the property of the estate, but that possibility cannot be sufficient to justify the operation of the stay against an enforcement proceeding that is expressly exempted by § 362(b)(4). To adopt such a characterization of enforcement proceedings would be to render subsection (b)(4)’s exception almost meaningless.”).
 

 A number of cases have explored how governmental actions falling within this overlapping territory should be treated for purposes of § 362 stays. In support of the proposition that the demolition orders were acts to control the property of the estate, Javens relies in part on
 
 In re Missouri,
 
 647 F.2d 768 (8th Cir.1981). In that case, Missouri sought a writ of mandamus against the United States Bankruptcy Court for the Eastern District of Arkansas, seeking recognition that proceedings the state had initiated against a debtor to enforce its grain regulatory laws were not subject to an automatic stay. At issue was whether the state could liquidate an insolvent grain warehouse (and presumably distribute the grain to the restive farmers who had deposited their harvest there), or whether the grain had to remain under, control of the bankruptcy court. Missouri argued that enforcement of its grain regulations qualified for a § 362(b)(4) exception. The Eighth Circuit disagreed.
 

 [W]e believe that the term ‘police or regulatory power’ refers to the enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court. ■
 

 Id.
 
 at 776. Javens invites the conclusion that demolition of their buildings “directly conflicts” with the bankruptcy court’s control of the estate’s property, and that under
 
 In re Missouri,
 
 there is no exception to the automatic stay.
 

 Javens, however, does not cite the accompanying passage in the Eighth Circuit decision:
 

 We conclude that Missouri’s grain laws, although regulatory in nature, primarily relate to the protection of the pecuniary interest in the debtors’ property and not to matters of public safety and health. Missouri’s laws, by governing the operation and liquidation of grain warehouses, directly conflict with the control of the property by the bankruptcy court and, therefore, do
 
 *-1208
 
 not fall within the section § 362(b)(4) exception.
 

 Id.
 
 at 776. This “pecuniary interest” distinction badly undercuts Javens’s argument.
 
 [8]
 
 Although Javens argues in his brief that the Hazel Park action was “pecuniary” because the cost of demolition was to be assessed against the estate, we think that enforcing the city building codes did not relate in a meaningful way to any pecuniary interest of the cities. Further, as the bankruptcy court noted, Hazel Park was not a creditor of the estate. But the absence of pecuniary interest does not fully address the issue of whether the cities’ actions “directly conflict[ed] with the control of the property by the bankruptcy court” in such a way as to render the (b)(4) and (5) exceptions inapplicable under
 
 In re Missouri.
 

 It is first important to observe that when
 
 In re Missouri
 
 was issued, § 362(a)(3) covered only “any act to obtain possession of property of or from the estate.” Congress amended that language in 1984 by adding the phrase “or to exercise control over property of the estate.” Thus, it cannot be assumed that “control of the property” as discussed in
 
 In re Missouri
 
 is the same sort of “control” as is mentioned in the amendment to § 362(a)(3).
 

 When Congress added the new language, it did so without explanation. And “the term ‘control’ is not defined in the 1984 amendments, nor is it generally defined in the Bankruptcy Code.”
 
 See In re National Cattle Congress, Inc.,
 
 179 B.R. 588, 595 (Bankr. N.D.Iowa 1995),
 
 remanded on other grounds,
 
 91 F.3d 1113 (8th Cir.1996);
 
 Beker Industries,
 
 57 B.R. at 625.
 
 [9]
 
 The fact that “to obtain possession” was amended to “to obtain possession ... or to exercise control” hints, however, that this kind of “control” might be a broadening of the concept of possession, and thus similar in kind; e.g. “controlling” a corporation or its assets through voting trusts or shareholder agreements, rather than by “possessing” it outright.
 
 Id.
 
 at 626 (“Since an act designed to change control of property could be tantamount to obtaining possession and have the same effect, it appears that § 362(a)(3) was merely tightened to obtain full protection.”). It could also have been intended to make clear that (a)(3) applied to property of the estate that was not in the possession of the debtor.
 

 Beker Industries
 
 was one of the first cases to address the meaning of “control” in the amended § 362(a)(3), and remains one of the most thoughtful explorations of the matter. Beker, the debtor, sought to enjoin — through the automatic stays of § 362(a)(1) and/or (a)(3) — continuation by the Florida Land and Water Adjudicatory Commission of administrative proceedings to restrict Beker’s shipping of phosphate rock from its mine to its refinery. For Florida to reduce the amount of rock it permitted Beker to ship on its highways, Beker argued, would be to
 
 control
 
 its property, since neither the mine nor the refinery could operate at desirable capacities if the transportation of rock from one to the other were restricted.
 

 The bankruptcy court reasoned that such a reading of the word “control” made sense only if Congress intended the term to include state and local
 
 regulation
 
 of property (not just state and local efforts to establish or protect a pecuniary interest in property, as in
 
 In re Missouri).
 
 To have so legislated would have overruled the numerous cases excepting governmental regulation from automatic stays, which Congress would not likely have done without some strong expression of intent, especially in view of its clear intent — seen just six years earlier with the enactment of the Code — to create such an exception.
 
 Beker Industries,
 
 57 B.R. at 626.
 
 *-1207
 
 The court “thus [held] that the scope of the control provision of § 362(a)(3), as applicable to governmental regulation, is governed by the contours of § 362(b)(4) as developed by case authority.”
 
 Ibid.
 
 In other words, the universe of actions that trigger an automatic stay under § 362(a)(3) does not include those governmental actions entitled, under § 362(b)(4), to an exception from an automatic stay.
 

 The district court relied in part on
 
 Cournoyer v. Town of Lincoln,
 
 790 F.2d 971 (1st Cir.1986),
 
 aff'g
 
 53 B.R. 478 (D.R.I.1985), a case in accord with
 
 Beker Industries.
 
 In
 
 Cournoyer,
 
 the defendant town had obtained, pursuant to its zoning ordinances, state court orders allowing it to remove and sell used truck parts in Coumoyer’s salvage yard.
 
 [10]
 
 Cournoyer, the debtor, sought to enforce an automatic stay to prevent the town from proceeding. The district court decision in the ease discussed in detail whether a § 362(a)(3) stay arose in the case, and in an analysis citing
 
 Missouri
 
 but presaging
 
 Beker,
 
 concluded that the removal and disposal of the truck parts were not acts to obtain possession or control of the debtor’s property. “[S]uch a characterization is inappropriate, and has been rejected, because of the justification underlying the governmental ac-tion_ [T]he sole motivation for the official action ... is to stop the debtor from operating a business in violation of state or local law. [The government has] no pecuniary interest in the debtor’s property, nor does the law under which it proceeds attempt to protect any other party’s pecuniary interest.” 53 B.R. at 483. Without identifying the particular subsection of § 362(a) from which an automatic stay arose, the First Circuit held that the § 362(b)(4) and (5) exceptions applied.
 

 In opposition to
 
 Cournoyer,
 
 Javens heavily relies on
 
 Hillis Motors, Inc. v. Hawaii Automobile Dealers’ Ass’n,
 
 997 F.2d 581 (9th Cir.1993).
 
 [11]
 
 In that ease, a Hawaii government agency (the “DCCA”) dissolved Hillis Motors, a Hawaii corporation, for failing to file annual exhibits and pay filing fees as required by Hawaii law. At the time of the dissolution, Hillis Motors was a Chapter 11 debtor, and argued that the DCCA’s action should have been automatically stayed. The district court held that § 362(a)(3) did not apply, because the DCCA’s action concerned not Hillis Motors’s property, but its status. The Ninth Circuit reversed, stating:
 

 There is no .question that the DCCA exercised control over Hillis’ corporate property by involuntarily dissolving Hillis. When a corporation is involuntarily dissolved by the DCCA, that action serves to vest legal and equitable title to all corporate property in the stockholders_ Thus, the effect of Hillis’ dissolution was to transfer all corporate property to the stockholders. Since all corporate property also passes to the estate when a bankruptcy petition is filed ... there is also no doubt that ... the DCCA exercised control over property that belonged to the estate just following the commencement of Hillis’ bankruptcy case.
 

 Id.
 
 at 586-87. The court held that the DCCA’s action was stayed by § 362(a)(3), for which there was no exception. Hence the dissolution was void
 
 ab initio,
 
 and Hillis Motors remained a corporation with standing to sue the defendant.
 

 Hillis Motors
 
 does not discuss
 
 Beker Industries,
 
 but rejects the holding of that ease that actions by governmental units to enforce their police or regulatory power are excepted from automatic stays otherwise arising under § 362(a)(3). The Ninth Circuit held that even if the structure of § 362 did not make it clear that the (b)(4) and (b)(5) exceptions did not apply to an (a)(3) stay,
 

 we would still hold that the governmental powers exceptions do not apply here. Wé agree with the Eighth Circuit [in
 
 In re
 
 Missouri] that the terms ‘police or regulatory power’ as used in those exceptions refer to the enforcement of state laws affecting health, morals, and safety but not regulatory laws that directly conflict with
 
 *-1206
 
 the control of the res or property by the bankruptcy court.
 

 997 F.2d at 591.
 

 But this analysis is fraught with difficulty. Like the original formulation in
 
 In re Missouri,
 
 it fails to account for actions that are undoubtedly exercises of police or regulatory power and that also, in some way, conflict with the control of the property of the estate by the bankruptcy court. Worse,
 
 Hillis Motors
 
 discounts the “pecuniary interest” distinction with which the Eighth Circuit partly solved that difficulty.
 
 [12]
 
 Finally, the case fails to consider the possible difference between the Eighth Circuit’s usage of “control,” and Congress’s later usage of the same word § 362(a)(3).
 
 Beker Industries,
 
 by contrast, convincingly explains why the
 
 In re Missouri
 
 “control” analysis should not apply to the amended § 362(a)(3).
 

 V
 

 In support of his argument that automatic stays arose under (a)(3), Javens also argues that (a)(1) can’t apply because that subsection speaks of actions against the debtor, and the demolition orders were, by contrast, in rem.
 
 [13]
 
 It is true that (a)(1) refers only to actions against the debtor, whereas other subsections of § 362(a) refer to actions against property. And it is true that some in rem actions, such as acts to create, perfect, or enforce liens against property of the estate,
 
 see
 
 § 362(a)(4), or of the debtor,
 
 see
 
 § 362(a)(5), are automatically stayed without exception. But it is beyond doubt that the Code cannot have the meaning that Javens suggests. Numerous governmental aims falling plainly within the police and regulatory power are enforced by means of actions in rem.
 
 See, e.g.,
 
 7 U.S.C. § 136k(b) (authorizing in rem proceedings to seize adulterated or mislabeled pesticides); 15 U.S.C. § 1195(b) (same, with respect to goods in violation of Flammable Fabrics Act); 15 U.S.C. § 2626 (same, with respect to compounds in violation of Toxic Substances Control Act); M.C.L.A. 289.711 (authorizing detention, embargo, and condemnation of adulterated or mislabeled food). If none of these were excepted from the automatic stays, the purpose of § 362(b)(4) would be grossly compromised. Clearly, § 362(a)(1) is not limited to in personam actions.
 

 The Royal Oak and first Hazel Park demolition orders, and the continuing Hazel Park litigation over 422 East George Street, all fit well within the language of § 362(a)(1). That provision is then subject to the exception provision of § 362(b)(4). As we concluded above, the cities’ actions were exercises of their police power within the meaning of (b)(4). Therefore, the cities’ actions enjoyed an exception to the stay, which the bankrupts ey court and district court correctly recognized.
 

 VI
 

 We acknowledge that there is authority for reaching a different conclusion in a case, such as this one, where the exercise of police or regulatory power has the effect of
 
 destroying
 
 property of the estate. In
 
 In re National Cattle Congress, Inc.,
 
 179 B.R. 588, 597-98 (Bankr.N.D.Iowa 1995),
 
 remanded on other grounds,
 
 91 F.3d 1113 (8th Cir. 1996), for example, where the state agency sought to revoke the debtor’s racing license, the bankruptcy court held that the agency would first have to seek relief from the automatic stay because “[r]evocation constitutes maximum control over Debtor’s racing license as the act destroys any value which this property has to the estate.”
 
 [14]
 
 Javens has argued vigorously for this proposition. We conclude that the (b)(4) and (b)(5) exceptions are not intended to be limited to non
 
 *-1205
 
 destructive exercises of governmental power. Many governmental actions clearly within the police or regulatory power destroy some or all of the value that property has to an estate. The limitation would too often void an exception Congress wrote into the law.
 

 Even if we subscribed to the view of
 
 In re National Cattle Congress,
 
 the cities would still have been mostly immune from damages for their actions. Section 362(h) allows “an individual injured by any willful violation of a stay provided by this section [to] recover actual damages, including costs and attorneys’ fees, and, in appropriate circumstances, [to] recover punitive damages.” Hazel Park and Royal Oak obtained orders from the bankruptcy court declaring that there was no stay in force to prevent the enforcement of their building and fire codes. Even if the bankruptcy court were wrong, and the cities should not have enjoyed exceptions to the automatic stays, it could scarcely be said that the cities willfully violated stays that court orders declared did not exist.
 
 [15]
 

 VII
 

 The judgment of the district court is AFFIRMED.
 

 [1]
 

 . 11 U.S.C. § 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.”
 

 [2]
 

 . We do not think that the dismissal of the case in bankruptcy affects the appealability of the orders recognizing the cities’ exemption from the automatic stay. An action under § 362(h) for damages for willful violation of an automatic stay survives dismissal of the case in bankruptcy.
 
 See Price v. Rockford,
 
 947 F.2d 829, 830-31 (7th Cir.1991). “Since dismissal of an underlying bankruptcy case does not automatically strip a federal court of residual jurisdiction to dispose of matters after the underlying bankruptcy case has been dismissed, exercise of such jurisdiction is left to the sound discretion of the trial court.
 
 In re Carraher,
 
 971 F.2d 327, 328 (9th Cir.1992);
 
 In re Morris,
 
 950 F.2d 1531, 1534 (11th Cir.1992);
 
 In re Smith,
 
 866 F.2d 576, 580 (3d Cir.1989)."
 
 In re Lawson,
 
 156 B.R. 43, 45 (9th Cir. BAP 1993).
 

 [3]
 

 . Javens requested leave to participate in oral argument pro se, which we granted with respect
 
 *-1211
 
 to the Royal Oak order. Javens, who is not a lawyer, appeared before this court and argued capably.
 

 [4]
 

 . In support of this proposition, Javens cites
 
 In re William Tell, II, Inc.,
 
 38 B.R. 327 (N.D.Ill. 1983). In that case, however, the discriminatory governmental action (refusal to renew a liquor license) was enjoined by the bankruptcy court by reason of 11 U.S.C. § 525, which prohibits governmental units from discriminating against debtors or former debtors in the issuance of licenses and permits.
 
 Id.
 
 at 330. Javens does not allege, of course, that the cities sought to enforce their building codes as a manner of discriminating against him as a debtor.
 

 [5]
 

 . The Federal Reserve proceeding challenged by MCorp had not yet progressed beyond the Federal Reserve’s expression of its intent to determine whether MCorp had violated banking regulations. In discussing whether these proceedings were automatically stayed pursuant to § 362(a)(3), the Court distinguished these investigations from proceedings that “culminate[d] in a final order" and further proceedings to enforce such an order. The latter, the Court suggested, might justify the exercise of jurisdiction by the bankruptcy court to enjoin enforcement of the final order. "We are not persuaded, however, that the automatic stay provisions of the Bankruptcy Code have any application to ongoing, nonfinal administrative proceedings." 502 U.S. at 41, 112 S.Ct. at 464. In the context of a discussion of § 362(a)(3), this sentence is merely a recognition that nonfinal proceedings are not "exercise[s] of control over [] property of the estate” that are stayed under that subsection. We do not read it to limit the Court’s discussion of § 362(b)(4) to those cases involving "ongoing, nonfinal administrative proceedings.”
 

 [6]
 

 .
 
 In re National Hospital
 
 was brought under the old Bankruptcy Act, under which there were no built-in exceptions for exercises of police or regulatory power. The court held that automatic stays under the Act were subject to challenges on grounds of bad faith.
 

 The court in
 
 In re Beker Industries Corp.,
 
 57 B.R. 611, 627 (Bankr.S.D.N.Y.1986), extended this principle from injunctions to automatic stays: "Section § 362(b)(4), in its qualification 'to enforce such governmental unit’s police or regulatory power,’ apparently excludes actions or proceedings brought for an ulterior motive and thus in bad faith. We see no reason, moreover, why Congress would exempt bad faith regulation from the automatic stay and thereby make a debtor's preliminary freedom from it subject to a showing of injury.... Indeed, the district court for this district has effectively adopted that approach by engrafting the
 
 National Hospital
 
 reasoning on to the § 362(b)(4) exemption.
 
 See In re Lawsón Burich Associates,
 
 31 B.R. [604] at 610 (S.D.N.Y.1983);
 
 accord In re Farmers and Ranchers Livestock Auction, Inc.,
 
 46 B.R. 781 (Bankr.E.D.Ark.1984).” This holding, however, pre-dates and is effectively overruled by
 
 MCorp.
 

 [7]
 

 .In
 
 In re National Hospital,
 
 the court held that a bankruptcy trustee seeking to bar governmental enforcement of a regulation has to show that the law or regulation is " 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence or paragraph, and in whatever maimer and against whomever an effort might be made to apply it’; that the state forum is biased; that the City acted in wilful disregard of the law; that City officials clearly abused their discretion in initiating proceedings against the trustee; or that the ‘state proceeding (was) motivated by a desire to harass.'" 658 F.2d at 44 (citations omitted).
 

 [8]
 

 . In deciding whether particular government actions are excepted from the automatic stay, courts have also applied a "public policy test.”
 
 See NLRB v. Edward Cooper Painting, Inc.,
 
 804 F.2d 934, 942 (6th Cir.1986). That analysis “ ‘distinguishes between proceedings that effectuate public policy and those that adjudicate private rights: only the former are excepted from the automatic stay.’ ”
 
 Ibid.,
 
 quoting
 
 In re Herr,
 
 28 B.R. 465, 468-69 (Bankr.D.Me.1983). Clearly, enforcement of building codes is an effectuation of public policy, rather than an adjudication of private rights.
 

 [9]
 

 . A nearly contemporaneous law review article about the amendments noted the "exercise control” provision without explanation other than to suggest it followed a pattern of greater explicitness in the automatic stay provisions. Ronald M. Martin and Terrence P. Fagan,
 
 A Guide to the Bankruptcy Amendments and Federal Judgeship Act of 1984,
 
 13 Colo. Law. 1775, 1786 (1984).
 
 See also
 
 Dermis Montali,
 
 Important Bankruptcy Code Changes in the Bankruptcy Amendments and Federal Judgeship Act of 1984,
 
 332 PLI/Comm 61, 73 (1984) (noting new language without explanation).
 

 [10]
 

 . The proceeds of the sale were to be returned to Cournoyer, less the expenses of removal and sale. 53 B.R. at 485.
 

 [11]
 

 . Hazel Park and Royal Oak argue that
 
 Hillis Motors
 
 is distinguishable in that the statute under which DCCA dissolved Hillis Motors did not affect health, welfare, and safety in the way building codes do.
 

 [12]
 

 . "While [the 'pecuniary interest' theory] seems an unduly narrow interpretation of the Eighth Circuit's decision, assuming this were a valid distinction, it is not availing to the appellees.”
 
 Hillis Motors,
 
 997 F.2d at 591 n. 19.
 

 [13]
 

 . The lawsuit by Hazel Park was styled as being against the Javenses and other individuals. Judge Nichols’s demolition order of February 2, 1994, was similarly captioned. On the other hand, Hazel Park Building Code § 15.04.190 separately describes actions against
 
 persons
 
 for violations (punishable by fine or imprisonment) and actions against
 
 buildings,
 
 which if declared to be a nuisance, may be ordered abated.
 
 See also
 
 Hazel Park Property Maintenance Code § 15.09.060. Thus, despite its caption, the first Hazel Park demolition order was seemingly an action in rem. The Royal Oak demolition order is styled "IN RE: Premises Located at 213 Euclid,” and the order is clearly issued against the house.
 

 [14]
 

 . Cf. Beker Industries,
 
 in which the bankruptcy court, before holding that the state's trucking
 
 *-1205
 
 regulations were excepted from the automatic stay, observed that "[t]here is no indication that the Commission Proceeding currently poses a threat to Beker's property.” 57 B.R. at 623 (S.D.N.Y.1986). The debtor had argued that a stay should apply where the regulatory action posed a threat to the property of the estate. The court noted that it found no authority to support that argument, and that, in any event, the state’s action did not so threaten the debtor's property.
 

 [15]
 

 . Javens alleges that Hazel Park directed local utility companies to cut service to the Blue Dot Building, causing frozen pipes and related damage, prior to the bankruptcy court’s order recognizing that the automatic stay did not apply. This order would not have shielded the cities from liability for these damages.