NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0419n.06

No. 20-1910

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

In re: JUANNELIOUS BENJAMIN MURRAY, SR. )
)
    Debtor. )
)
_____ )
)
JUANNELIOUS BENJAMIN MURRAY, SR., )
)
    Plaintiff-Appellant, )
)
    v. )
)
SAFIR LAW P.L.C., )
)
    Defendant-Appellee. )
)

```
                                    FILED
                                  Sep 03, 2021
                              DEBORAH S. HUNT, Clerk
```

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE: COLE, CLAY, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Safir Law P.L.C. represented plaintiff Juannelious Benjamin Murray, Sr. in a lawsuit against Murray's insurer. While the insurance lawsuit was pending, plaintiff initiated a bankruptcy case in 2016. Safir Law secured a settlement in the insurance lawsuit and Murray wanted it to be administered in his 2016 bankruptcy case. But before he could make that happen, his bankruptcy case was dismissed.

Plaintiff believed that defendant improperly retained possession of the settlement money from the insurance lawsuit. To get that money, plaintiff filed an adversary complaint against defendant as part of another bankruptcy case that he started in 2019. The bankruptcy court, however, dismissed his adversary complaint because it dismissed the underlying 2019 bankruptcy

case. Murray contends that the bankruptcy court's dismissal of his adversary complaint was improper because dismissal of an underlying bankruptcy case does not automatically deprive a federal court of residual jurisdiction to adjudicate collateral matters. For the reasons below, we affirm the district court's judgment regarding counts one, three, four, five, and six of his adversary complaint. But regarding count two, we vacate the district court's judgment and remand with instructions to remand the case to the bankruptcy court so that it may exercise its discretion to consider whether to retain residual jurisdiction over count two.

I.

In 2015, plaintiff initiated a personal injury lawsuit against his insurer for medical benefits in a Michigan state court. Defendant represented plaintiff in that lawsuit. While the insurance lawsuit was pending, plaintiff commenced a Chapter 13 bankruptcy case ("2016 Bankruptcy Case"). Plaintiff listed the insurance lawsuit as an asset in the 2016 Bankruptcy Case. Three months after the onset of the bankruptcy case, Safir Law settled the insurance lawsuit allegedly without the informing the bankruptcy trustee or gaining the approval of the bankruptcy court.

Pursuant to the settlement, the insurer drew a $61,000 check that was payable to defendant. The same day, defendant emailed plaintiff's bankruptcy attorney a list of plaintiff's medical expenses that would be paid pursuant to the settlement. About a month later, attorneys representing plaintiff in the 2016 Bankruptcy Case sent Safir Law a letter. The attorneys indicated that (1) they were aware that defendant was "retained by [plaintiff] with respect to a non-bankruptcy legal matter"; (2) "[t]he Trustee [of the 2016 Bankruptcy Case] may hold an interest in any recovery arising from debtor's legal claims of action"; and (3) "[a]ny interest [defendant] or others may have in the prospective recovery could be affected by an interest the [2016

Bankruptcy Case's] estate may hold."[1] The bankruptcy court later dismissed the 2016 Bankruptcy Case "[f]or failure to comply with the terms and conditions set forth in the Order Adjourning Hearing entered on or about August 8, 2016" and "for the Debtor's failure to be 100% current on Trustee records on or before October 17, 2016."

Roughly a week later, the state court approved the settlement in the insurance lawsuit. The total settlement amount was $61,000.00. Out of that sum, $20,298.55 were attorney fees. Defendant received the "[s]ettlement proceeds check sometime thereafter."

Years later, plaintiff commenced another Chapter 13 bankruptcy case ("2019 Bankruptcy Case"). He filed an ex parte motion to re-open the 2016 Bankruptcy Case to administer the disputed insurance lawsuit settlement assets. Two weeks later, the bankruptcy court entered an order that re-opened the 2016 Bankruptcy Case. The court, however, was "advised that [plaintiff already] ha[d] a pending bankruptcy case" (i.e., the 2019 Bankruptcy Case). Because he "[wa]s not permitted to have two pending open bankruptcy cases," the bankruptcy court vacated its earlier order that re-opened the 2016 Bankruptcy Case and closed that case. Additionally, the court ordered that "[a]ny future pleadings shall be filed in [plaintiff's] pending case" (i.e., the 2019 Bankruptcy Case).

Subsequently, plaintiff filed an adversary complaint against Safir Law in the 2019 Bankruptcy Case against Safir Law P.L.C. The pleading contained six counts: (1) an independent action for relief from the dismissal of the 2016 Bankruptcy Case; (2) a turnover claim, a violation-of-the-automatic stay claim, and an attorney-fees claim; (3) a state-law unjust enrichment claim for the insurance lawsuit's settlement money; (4) a state-law unjust enrichment claim for attorney

---

[1]Plaintiff observes that the use of the term "prospective recovery" suggests that defendant had not told his bankruptcy attorney that the insurance lawsuit had settled.

fees defendant obtained from the insurance lawsuit; (5) a state-law common law conversion claim; and (6) a state-law statutory conversion claim.

The bankruptcy court, however, dismissed the 2019 Bankruptcy Case "[f]or [plaintiff's] failure to comply with the terms and conditions set forth in the Order Regarding Trustee's Motion to Dismiss . . . by failing to be 100% on trustee records one week prior to confirmation." The bankruptcy court also dismissed the adversary complaint without resolving its merits. Instead, in a one-sentence order, the bankruptcy court dismissed the adversary complaint "[a]s a result of the [underlying 2019] Chapter 13 [bankruptcy] case having been dismissed."

Plaintiff appealed the bankruptcy court's dismissal of his adversary complaint to the district court. He did not, however, appeal the dismissal of the underlying 2019 Bankruptcy Case. The district court affirmed. It concluded that the bankruptcy court never had subject-matter jurisdiction over the adversary complaint, even at the moment it was filed, because the adversary complaint lacked the necessary nexus with the 2019 Bankruptcy Case. And because the bankruptcy court never had subject-matter jurisdiction over the adversary complaint to begin with, it reasoned that there was no subject-matter jurisdiction for the bankruptcy court to "retain" after dismissing the 2019 Bankruptcy Case.

Plaintiff timely appealed.

## II.

"When reviewing an order of a bankruptcy court on appeal from a decision of a district court," as is the case here, "we review the bankruptcy court's order directly and give no deference to the district court's decision." *In re Lee*, 530 F.3d 458, 463 (6th Cir. 2008).

The bankruptcy court—in a one-sentence order—dismissed the adversary complaint "[a]s a result of the [underlying 2019] Chapter 13 case having been dismissed." Though the bankruptcy court did not say so explicitly, it appeared to be following the "general rule [that] the dismissal of

a bankruptcy case should result in the dismissal of 'related proceedings' because the court's jurisdiction of the latter depends, in the first instance, upon the nexus between the underlying bankruptcy case and the related proceedings." *In re 5900 Assocs., Inc.*, 468 F.3d 326, 330 (6th Cir. 2006) (quoting *In re Smith*, 866 F.2d 576, 580 (3d Cir. 1989)). In other words, the bankruptcy court apparently declined to exercise residual jurisdiction over the adversary complaint after it had dismissed the underlying 2019 bankruptcy case. We review this type of decision for an abuse of discretion. *In re Javens*, 107 F.3d 359, 364 n.2 (6th Cir. 1997) ("Since dismissal of an underlying bankruptcy case does not automatically strip a federal court of residual jurisdiction to dispose of matters after the underlying bankruptcy case has been dismissed, exercise of such jurisdiction is left to the sound discretion of the trial court[.]" (quoting *In re Lawson*, 156 B.R. 43, 45 (B.A.P. 9th Cir. 1993))). A bankruptcy court abuses its discretion when it (1) "relies upon clearly erroneous findings of fact," (2) "improperly applies the law," or (3) "uses an erroneous legal standard." *In re Airspect Air, Inc.*, 385 F.3d 915, 920 (6th Cir. 2004).

## III.

### A.

The district court affirmed the bankruptcy court's dismissal of Murray's entire adversary complaint, including count one. In that count, Murray asked the bankruptcy court "to set aside the dismissal of the 2016 bankruptcy case." On appeal, however, he does not mention count one in his statement of issues and does not advance any arguments concerning it. Murray, therefore, forfeited his opportunity for us to consider why the bankruptcy court might have resolved count one incorrectly. *See United States v. Mahaffey*, 983 F.3d 238, 240 n.2 (6th Cir. 2020) (explaining that an appellant "forfeited [the court's] consideration of [an] issue because he did not include it in his statement of issues"); *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 621 (6th Cir. 2013)

("Issues adverted to in a perfunctory manner, without some effort to develop an argument, are deemed forfeited.").

B.

Murray's adversary complaint included various state law claims in counts three through six. He contends that the bankruptcy court retained jurisdiction over the state law claims because "the facts in those claims [we]re integrally related to" (1) "review of . . . attorney fees [awarded] pursuant to [the Bankruptcy Code], and concomitant disgorgement," and (2) "turnover of the $61,000 settlement proceeds." We are unpersuaded.

The nature of plaintiff's arguments regarding his state law claims is misguided. As "[t]he party asserting subject-matter jurisdiction," Murray "bears the burden of establishing that such jurisdiction exists." *Hale v. Morgan Stanley Smith Barney LLC*, 982 F.3d 996, 997 (6th Cir. 2020). Instead of offering arguments concerning subject-matter jurisdiction, Murray discusses why he believes his state-law claims should succeed on the merits. Moreover, his contention that the bankruptcy court *retained* jurisdiction over the state-law claims does not answer the critical (and antecedent) question: Whether the bankruptcy court—before the dismissal of the underlying bankruptcy case—possessed subject-matter jurisdiction over the state-law claims that it could later retain after the underlying bankruptcy had been dismissed. *Compare In re Wolverine Radio Co.*, 930 F.2d 1132, 1140–42 (6th Cir. 1991) (describing the contours of the bankruptcy subject-matter jurisdiction inquiry) *with In re Millenium Seacarriers, Inc.*, 458 F.3d 92, 96 (2d Cir. 2006) (describing the contours of the bankruptcy court's inquiry regarding retaining jurisdiction after the underlying bankruptcy case has been dismissed).

Because Murray asserted that his state law claims were "related to" his Bankruptcy Code claims, perhaps he intended to invoke the "proceedings 'related to' a case under [the Bankruptcy Code]" category of bankruptcy court subject-matter jurisdiction. *Wolverine Radio*, 930 F.2d at

1141 (quoting 28 U.S.C. § 1334). If so, he made no meaningful attempt to explain why his state-law claims fell within that class of the bankruptcy court's subject-matter jurisdiction. And in our circuit, "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way" and leave us to "put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation omitted). Accordingly, we leave the district court's judgment intact as it pertains to Murray's state-law claims.

## C.

The last aspect of this appeal concerns count two of the adversary complaint. That count includes a turnover claim, a violation-of-the-automatic-stay claim, and an attorney-fees claim, all of which are predicated on federal bankruptcy law. The question for us is whether the bankruptcy court abused its discretion when it dismissed this count.

A bankruptcy court is a federal court. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, (1995). And like other federal courts, a "bankruptcy court is a court of limited [subject-matter] jurisdiction," *In re Granger Garage, Inc.*, 921 F.2d 74, 77 (6th Cir. 1990), with "a continuing obligation to examine [its] subject matter jurisdiction throughout the pendency of every matter before [it]." *Wolverine Radio*, 930 F.2d at 1137.

Multiple federal statutes define the scope of a bankruptcy court's subject-matter jurisdiction. First, under 28 U.S.C. § 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Second, 28 U.S.C. § 157(a) authorizes the district courts to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." Additionally, 28 U.S.C. § 157(b) allows "[b]ankruptcy judges . . . [to] hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a)

of this section."  Count two's claims are (1) a turnover claim; (2) a violation-of-the-automatic-stay

claim; and (3) an attorney fees claim.[2]  Each of count two's claims is a "core proceeding."  *See*

28 U.S.C. § 157(b)(2) ("Core proceedings include, but are not limited to . . . matters concerning

the administration of the estate; . . . orders to turn over property of the estate; . . . [and] motions to

terminate, annul, or modify the automatic stay[.]"); *In re Coomer*, 375 B.R. 800, 803 (Bankr. N.D.

Ohio 2007) ("The adjudication of matters concerning the turnover of estate property are deemed

to be core proceedings over which this Court has the jurisdictional authority to enter final orders

and judgments."); *In re Nat. Century Fin. Enter., Inc.*, 423 F.3d 567, 573 (6th Cir. 2005)

(recognizing that enforcing an automatic stay "constituted a core proceeding"); *In re Holiday

Towers*, No. 91-3854, 1992 WL 107063, at *2 (6th Cir. May 15, 1992) (table decision)

("Determinations of attorney's fees are core proceedings because such determinations are

obviously matters concerning the administration of the estate.").  And as core proceedings, the

bankruptcy court would have had subject-matter jurisdiction over the claims in count two when

plaintiff filed them in the 2019 Bankruptcy Case—if the claims had concerned *that* bankruptcy

case.

---

[2]The district court asserted that "this case does not involve *bankruptcy* attorney's fees."  *In re Murray*, No. 19-12613, 2020 WL 5291964, at *3 (E.D. Mich. Sept. 4, 2020).  Although defendant did not represent plaintiff in any bankruptcy cases, a bankruptcy court's reach is longer than that.  Neither the district court nor defendant meaningfully confronted the fact that a bankruptcy court is "empowered to order disgorgement of . . . attorney fees charged '*in connection with*' the bankruptcy case."  *In re Kisseberth*, 273 F.3d 714, 718–19 (6th Cir. 2001) (emphasis added) (citing 11 U.S.C. § 329).  Plaintiff alleged that the insurance lawsuit settlement money was property of the 2016 Bankruptcy Case's estate.  He also alleged that defendant—without the bankruptcy court's permission—took part of that sum as attorney fees.  Accordingly, defendant's representation of plaintiff in the insurance lawsuit was arguably "in connection with" the 2016 Bankruptcy Case.  *See, e.g.*, *In re Jones*, 505 B.R. 229, 233 (Bankr. E.D. Wis. 2014) ("While most obviously applicable to bankruptcy counsel's compensation, these provisions apply equally to counsel employed by a debtor to provide legal services 'in connection with' her bankruptcy case, such as pursuing a claim that is property of the estate.").

Plaintiff contends that "[i]t makes no difference that the transgressions complained of [in the adversary complaint] occurred during the dismissed 2016 Chapter 13 bankruptcy case but are brought in an adversary proceeding in the later 2019 bankruptcy case." "It makes no difference," he says, "because the subject attorney fee violation rectified in *In re 5900 Associates, Inc.* also occurred in a separate earlier bankruptcy case, 6 years before." *5900 Associates* resolves part of the subject-matter jurisdiction question. The case involved a dispute over a core proceeding (attorney fees) from a dismissed (and earlier) bankruptcy case in an active (and more recent) bankruptcy case. 468 F.3d at 328. We noted that "[a] number of courts have held that the bankruptcy court may retain jurisdiction over matters related to the bankruptcy even after the underlying case has been adjudicated or dismissed." *Id.* at 330. And we held that "the bankruptcy court retains jurisdiction to approve attorney's fees . . . after the underlying case is dismissed." *Id.* *5900 Associates*, therefore, instructs that a bankruptcy court retains subject-matter jurisdiction to adjudicate core proceedings after the underlying bankruptcy has been dismissed. *Id.* As explained above, the claims in count two are core proceedings. Accordingly, even though the underlying bankruptcy case had been dismissed, the bankruptcy court still retained subject-matter jurisdiction to decide them. That conclusion, however, is not the end of the jurisdictional analysis in this context.

Although the bankruptcy court retained subject-matter jurisdiction over count two's claims after the underlying bankruptcy was dismissed, the "exercise of such jurisdiction [wa]s left to [its] sound discretion." *Javens*, 107 F.3d at 364 n.2. The bankruptcy court's dismissal was one sentence: "As a result of the [2019] Chapter 13 case having been dismissed on August 20, 2019; IT IS HEREBY ORDERED that the captioned adversary proceeding is also dismissed." It appears that the bankruptcy court employed the "general rule [that] the dismissal of a bankruptcy case

should result in the dismissal of 'related proceedings' because the court's jurisdiction of the latter depends, in the first instance, upon the nexus between the underlying bankruptcy case and the related proceedings." *5900 Associates*, 468 F.3d at 330 (quoting *Smith*, 866 F.2d at 580). The bankruptcy court, however, should have recognized that "dismissal of an underlying bankruptcy case does not automatically strip a federal court of residual jurisdiction to dispose of matters after the underlying bankruptcy case has been dismissed." *Javens*, 107 F.3d at 364 n.2 (quoting *Lawson*, 156 B.R. at 45). Thus, it should have used its "sound discretion" to determine whether to exercise that residual jurisdiction. *Id.* (quoting *Lawson*, 156 B.R. at 45). Four factors guide that discretion: "economy, convenience, fairness, and comity." *Peabody Landscape Constr. Inc. v. Schottenstein*, 371 B.R. 276, 281 (S.D. Ohio 2007); *accord Millenium Seacarriers*, 458 F.3d at 96; *In re Valdez Fisheries Dev. Ass'n, Inc.*, 439 F.3d 545, 548 (9th Cir. 2006); *In re Querner*, 7 F.3d 1199, 1202 (5th Cir. 1993). We are unable to determine from the one-sentence order whether the bankruptcy court considered the relevant factors and properly exercised its discretion. Accordingly, we remand this case for the bankruptcy court to consider whether to exercise its retained subject-matter jurisdiction to adjudicate the claims in count two.

## IV.

For the foregoing reasons, we affirm the district court's judgment regarding counts one, three, four, five, and six of the adversary complaint. We vacate the district court's judgment regarding count two and remand with instructions for the district court to remand the case to the bankruptcy court for it to exercise its discretion regarding whether to retain residual jurisdiction over count two.