**In re Izell BLUNT and Raydeen Blunt, d/b/a Blunt & Blunt Enterprises, Debtors.**

**Valerie Hall MANUEL, Trustee of the Estate of Izell Blunt and Raydeen Blunt, d/b/a Blunt & Blunt Enterprises, Plaintiff,**

**v.**

**CITY OF JACKSONVILLE, a body corporate, and A. James Agett, Defendants.**

**Bankruptcy No. 92–3146–BKC–3P7. Adversary No. 94–293.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

July 28, 1997.

G. Everett Burghardt Williams, Jacksonville, FL, for plaintiff.

Louis Tous, Jacksonville, FL, for City of Jacksonville.

Valerie Hall Manuel, Jacksonville, FL, trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court upon a complaint by the Chapter 7 Trustee seeking judgment for monetary damages based on breach of contract, detrimental reliance and violation of the automatic stay against the Defendants City of Jacksonville and A. James Agett. Trial was held on October 16, 1996, October 29, 1996, December 10, 1996, December 12, 1996 and May 13, 1997.

On October 16, 1996, Plaintiff made an *ore tenus* motion to dismiss Defendant A. James Agett. The Court granted the motion, and an order was entered on December 12, 1996 dismissing Defendant A. James Agett and Count IV of the Complaint. Upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of law on the remaining counts of the complaint:

## FINDINGS OF FACT

1. Izell Blunt and Raydeen Blunt ("Debtors") operate Blunt & Blunt Enterprises. (Tr. 22). Debtors owned and managed various rental properties, including the following located in Jacksonville, Florida: Society Court at 1780 Pearce Street; Grothe Gardens at 1402 through 1414 Grothe Street; and Mercedes Court at 1477 North Davis Street. (Tr. 22–23).

2. In 1988, Debtors applied to the City of Jacksonville Department of Housing and Urban Development Rental Rehabilitation Program for rehabilitation loans to renovate the Grothe Gardens, Mercedes Court, and Society Court complexes. (Tr. 24–26; Pl.'s Ex. F5). The Rental Rehabilitation Loan Program ("RRLP") is funded through the Federal Department of Housing and Urban Development for the purpose of increasing the number of rental units available for low to moderate income tenants and rehabilitating existing housing structures within the private sector. (Pl.'s Ex. G 1). The City of Jacksonville, through Jacksonville Department of Housing and Urban Development ("JHUD"/"Defendant"), uses the federal grant to make deferred payment loans to owners who meet the program's criteria. (*Id.*). The owners then use the loan to repair existing rental structures and bring them up to federal housing standards. (*Id.*). The owners must match JHUD's loan portion through a private lender, and allow the JHUD to take a second mortgage on the property. (*Id.*). JHUD began in 1984. (*Id.*).

### *The Society Court Complex*

3. Based on JHUD's budgetary concerns, it advised Debtors it would renovate one complex at a time, and Debtors chose to begin with the Society Court complex. On September 8, 1989, Debtors and Defendant entered into a Construction Loan Agreement ("Loan Contract"), under which Defendant agreed to make a loan for improvements to the Society Court Apartments. (Def.'s Ex. 2). On the same day, Debtors also entered into a Rehabilitation Work Contract ("Rehab Contract") with Harold D. Drake and the JADME company ("JADME") as contractor to renovate the Society Court complex. (Pl.'s Ex. 33).

4. The Loan Contract provides that Defendant should disburse loan funds only if certain conditions were satisfied. (Def.'s Ex.2, at Art. 3, Ex.B). These conditions include:

(1) Proofs as to paid and unpaid construction bills for materialmen and subcontractors which show full payment of such bills then due and payable;

(2) Lien waivers for all work and materials as required by the title insurance company for the issuance of endorsement;

(3) Any inspection reports or architectural certificates with respect to the stage of completion of the improvements, and such other proof as Lender [Defendant] may reasonably require to establish that development or construction progress has been made in compliance with the plans and specifications.

(*Id.*).

5. Although the Rehab Contract was only between JADME and Debtors, it laid out very specific duties for Defendant. (Pl.'s Ex. 33). Article 9 of the Rehab Contract assigned the following duties to Defendant:

9.1 JHUD shall provide general administration of the Contract and shall assist the Owner by acting as the Owner representative during the construction period.

9.2 JHUD's authorized representative shall make inspections of the work while it is in progress to determine if it is proceeding in accordance with the contract documents.

9.3 JHUD shall have the authority to reject work which does not conform to the Contract documents, local codes or adopted program standards.

(*Id.*). Defendant also had very specific duties and rights pursuant to Articles 2, 4, 6, 7, 8, 9, 11, 13, 15, and 16 of the contract. (*Id.*). The Rehab Contract required that there should be a performance bond for construction in excess of $100,000 to comply with federal law. (*Id.*). The Debtors and JADME were involved in construction in excess

of $100,000 and no construction bond was obtained. (Pl.'s Ex. G1).

6. The first disbursement of funds to JADME was made on October 10, 1989 in the amount of $22,490, which represented eleven percent (11%) of project completion. (Def.'s Ex. 26). By February 1990, Defendant made four disbursements to JADME, which represented approximately forty-nine percent (49%) of project completion. (*Id.*).

7. In February 1990, the Society Court project began experiencing difficulties associated with the failure of JADME to perform satisfactorily as the contractor. (Pl.'s Ex. 35). On March 1, 1990, a First Change Order was approved, extending the Society Court rehabilitation project from February 25 through March 30, 1990. (Def.'s Ex. 26). On April 15, 1990, Mr. Maahs, the City's representative, recommended a replacement of JADME's project manager because the Society Court project was not being completed. (Tr. at 603–06, 615, 632–635; Def.'s Ex. 29). The project manager was replaced after April 15, 1990, and the renovations continued. (*Id.*).

8. The Society Court renovations were not completed by the established date of March 30, 1990; however, on April 26, 1990, the eighth disbursement was made representing ninety-one percent (91%) of project completion. (Def.'s Ex. 26). The first eight disbursement were made after Defendant's representative inspected of the Society Court renovations. (*Id.*). The checks were made payable to the Debtors and JADME. (*Id.*). The disbursement checks were delivered to Debtors, who endorsed them and subsequently delivered them to JADME. (Tr. at 245, 518–27; Def.'s Ex. 26).

9. On July 10, 1990, the Blunts certified completion of all fifty (50) Society Court apartment units, except apartment number 10. (Tr. 112–16,247–51,527–30; Def.'s Ex. 17).

10. On August 30, 1990, JHUD and Debtors became aware that JADME had not paid the subcontractors and that the final disbursement still being held in the approximate amount of $31,000, would not be sufficient to pay all that was owed under the project. (Pl.'s Ex. 48). The proposed final disbursement to JADME was never made because JADME failed to produce a final release of liens. (Tr. 578–80).

11. JHUD made its tenth disbursement on April 4, 1991 in the amount of. $8,750. (Adv. Rec. 64, at 17). This payment was made directly to Sears who was in the process of repossessing all appliances delivered to the Society Court project. (*Id.*).

12. In September 1991, the Office of the Council Auditor for the City of Jacksonville conducted an audit of the Society Court project and found a number of deficiencies. (Pl.'s Ex. G 1). The Auditor issued a report criticizing JHUD's policies and procedures and the handling of the Society Court project. (*Id.*). The report pointed out a litany of mistakes the Defendant made. The Auditor found that Defendant approved payments to JADME without first making sure that the conditions under the Loan Contract were satisfied. (*Id.*).

13. The report also pointed out that Debtors did not perform under the Loan Contract because they failed to satisfy mechanics liens and failed to obtain liability insurance. (*Id.* at 3, 7). In addition, before each disbursements, Debtors signed all the Contractor's Affidavits verifying completion of construction at various stages of the renovation. (Pl.'s Ex. 26). Debtors were equally responsible for completing the tasks Plaintiff claims Defendant should have completed.

### The Grothe Gardens and Mercedes Court Complexes

14. The Debtors sought similar rehabilitation loans for the Grothe Gardens and Mercedes Court complexes. Due to the delay in the Society Court renovation project, Debtors were unable to begin renovation of Grothe Gardens and Mercedes Court complexes.

15. Mr. Maahs, who was the Housing Rehabilitation Specialist for the RRLP and the Defendant's representative, testified that he told the Debtors that it would be better if both complexes were without tenants because the tenants would not receive relocation fees when the construction started. (Tr. 507–09,

531, 546). Mr. Maahs also wrote Debtors, advising them that the Defendant would be willing to rehabilitate the Grothe Gardens and Mercedes Court complexes, but could only do one complex at a time. (Pl.'s Ex. F17). Mr. Maahs' letter, dated March 21, 1990, states, in relevant part, that: "We plan to assist you in the need to rehab both of the complexes, we just need to proceed with the *one* of your choice at this time." (*Id.*) (emphasis in original). In a Memorandum dated December 7, 1993 from William G. Mauzy, Coordinator of the Affordable Housing and Rehab Operations, to Mr. Jim McDonald, Chief of Property Safety, Defendant reiterated its intent to assist Debtors in the rehabilitation of the Grothe complex as soon as the Society Court project was completed. (Pl.'s Ex. F3). Debtors testified that they relied on Defendant's statements to not re-rent and both complexes subsequently became vacant. (Tr. 56–57; 214–17).

16. The Grothe Garden complex was condemned in April 1991 because it was vacant, vandalized, and was in violation of Chapter 548 of the Jacksonville Municipal Ordinance Code. (Pl.'s Ex. F4). The first notice of condemnation was issued on March 26, 1992 by the City of Jacksonville, Department of Regulatory and Environmental Services, Property Safety Division. (Def.'s Ex. 3).

17. On June 1, 1992, the Debtors filed for relief under Chapter 11 of the Bankruptcy Code because foreclosure proceedings began on the Grothe Gardens and Mercedes Court complexes. (Main Case Doc. 1; Adv. Rec. 66, at 4).

18. After commencement of the bankruptcy case, Condemnation proceedings continued with the Grothe Gardens complex. On June 15, 1992, the Municipal Code Enforcement Board of the City of Jacksonville entered an Order imposing administrative fines and liens on the Grothe Gardens property. (Def.'s Ex. 5). On April 6, 1993, a second notice of condemnation was issued by the City of Jacksonville, Department of Regulatory and Environmental Services, Property Safety Division. (Def.'s Ex. 6). On May 3, 1993, the City of Jacksonville, Fire and Rescue Department, Fire Prevention Division issued a notice that the Grothe Gardens

complex was a fire hazard. (Def.'s Ex. 7). The Grothe Gardens complex was subsequently demolished on April 6, 1994. (Adv. Rec. 64, at 27).

19. On March 29, 1994, Debtors moved to hold Defendant in contempt for violation of the automatic stay. (Main Case Doc. 109). The Court held a hearing on the Motion, but a decision was not rendered because the case was converted to Chapter 7 on September 13, 1994. (Main Case Doc. 154). The parties stipulated that all testimony and exhibits from the contempt hearing are admissible into evidence in this adversary proceeding. (Tr. 145–46).

20. On November 9, 1994, the Trustee ("Plaintiff") commenced this adversary proceeding seeking to recover monetary damages for breach of contract, detrimental reliance, and violation of the automatic stay against Defendants. (Adv.Rec.1).

21. Count I of the complaint alleges that the Defendant failed to perform under the contract when it did not follow established procedures and guidelines for inspecting the Society Court renovation project, administering the rehabilitation loan contract, and making payments to the contractor for worked actually performed. Consequently, the project was delayed and the Debtors to sustained income loss. (Adv.Rec.1). Count II of the complaint alleges detrimental reliance. Plaintiff states that the Defendant promised Debtors to renovate the Grothe and Mercedes complexes. The Defendant urged the Debtors not renew leases or issue new leases to the Grothe Gardens and Mercedes Court apartments in an effort to eliminate the need for the Defendant to pay relocation costs to tenants while those apartments were under renovation. (*Id.*). The Debtors state that they detrimentally relied on the Defendant and decided not to rent the apartments. Consequently, the Mercedes Court and Grothe Garden Apartments became vacant, vandalized, condemned as non-income producing and became subject to fines. (*Id.*). Because of the loss of income from these properties, Debtors were unable to pay mortgages, foreclosure proceedings were instituted and Debtors were forced to seek the protection of the Bankruptcy Code. (*Id.*).

The Debtors also suffered the loss of the Grothe Gardens apartment complex. (*Id.*). Count III of the complaint alleges that the Defendant violated the Automatic Stay pursuant to 11 U.S.C. § 362(a) when it demolished the Grothe Gardens complex. (*Id.*).

22. The Defendant denied Plaintiff's allegations and raised affirmative defenses asserting that: (1) it had no duty to administer or manage the construction contract; (2) it is protected by an indemnity clause in the contract; (3) it is immune from tort liability under Fla. Stat. § 768.28; (4) Debtors' were contributorily negligent; (5) the demolition did not violate the stay because it was a proceeding by a governmental unit to enforce its regulatory and police powers, and was done pursuant to a notice and hearing; and (6) the Defendant is entitled to setoff for fines, liens, and demolition expenses, and taxes to the extent the Defendant owes Debtors anything. (Adv.Rec.4). Defendant, in its answer and post-trial brief, focused on the theory of negligence, while the complaint dealt with the breach of contract theory. (*Id.;* Adv. Rec. 64).

23. On December 21, 1994, the Defendant filed a motion for summary judgment, alleging that no triable issues of fact exist because the Defendant was shielded from liability by an indemnification clause in the Construction Loan Agreement. (Adv.Rec.8). The Defendant argued that the indemnification clause (a "hold harmless" clause) automatically protects it from Plaintiff's claims for damages and removes any triable issues of fact. (*Id.*). At the hearing, Plaintiff argued that the clause was ambiguous and the required interpretation presented a triable issue of fact. *See Manuel v. City of Jacksonville (In re Blunt)*, 183 B.R. 302, 304 (Bankr.M.D.Fla. 1995). The Court found the contract was ambiguous, and denied summary judgment. *Id.* at 304–05.

24. Trial was held on October 16, 1996, October 29, 1996, December 10, 1996, December 12, 1996 and May 13, 1997.

### Damages

25. The Plaintiff seeks damages for loss of rental income for the Grothe Gardens, Mercedes Court and Society Court complexes. For the Society Court complex, Plaintiff seeks $49,912 as loss of rental income damages from April 6, 1990 through December 1994, including deductions for expenses during these periods. (Adv. Rec. 66, at 11; Pl.'s Ex. 63).

26. For the Grothe Gardens complex, Plaintiff seeks $194,976.50 in damages for loss of rental income from January 1991 to July 1997, including deductions for expenses during these periods. (Adv. Rec. 66, at 11–12). Plaintiff also seeks $1,000,000 in damages for Defendant's willful violation of the automatic stay when it demolished the Grothe Gardens complex. (Adv. Rec. 66, at 12). Plaintiff contends that the Grothe Gardens complex was valued at $167,000 at the time it was demolished. (*Id.*). However, Defendant contends that it was valued at $52,432 when demolished. (Tr. 671–72).

27. For the Mercedes Court complex, the Plaintiff seeks $94,777.67 in damages for loss of rental income from January 1991 to July 1997. (Adv. Rec. 66, at 11; Pl.'s Ex. 63).

28. Damages were calculated using a ten percent (10%) vacancy rate, deducting net operating expenses, and considering projected losses. (Tr. 206–08).

29. The Defendant claims a right to setoff for any possible damages awarded against administrative expenses in the amount of $53,884.12 filed by it in the main case. (Main Case Doc. 135). The Plaintiff agrees that the Defendant is entitled to set-off, but in an amount of fifteen percent (15%) of the amount the Court awards. (Adv. Rec. 66, at 12).

### CONCLUSIONS OF LAW

The issues before the Court are whether Defendant is liable for breach of contract, whether Debtors detrimentally relied Defendant's promises and sustained damages as a result, and whether Defendant's action of demolishing a condemned property is an exception to the automatic stay. The Court will address each issue accordingly.

#### A. Count I—Breach of Contract

First, is whether Defendant is liable for breach of a contract. Under Florida

law, the elements for a breach of contract are the existence of contract, breach of the contract, and damages. *Anthony Dist., v. Miller Brewing Co.,* 941 F.Supp. 1567, 1574 (M.D.Fla.1996). The are two contracts, the Rehab Contract and the Loan Contract, which Plaintiff contends were breached. (Pl.'s Ex. 33; Def.'s Ex. 2). Although, Defendant did not sign the Rehab Contract, it has very specific duties and rights pursuant to Articles 2, 4, 6, 7, 8, 9, 11, 13, 15, and 16 of the contract. (Def.'s Ex. 2). With the Rehab Contract, Plaintiff contends that the Defendant did not make sure that the work was completed on time and that a performance bond was secured. With the Loan Contract, Plaintiff argues that the Defendant disbursed funds jointly in the name of the Contractor and Debtors without verifying that all subcontractors and suppliers were paid.

Based on the evidence presented, the Defendant did not perform its duties under both contracts. However, Florida case law provides that "in order to maintain an action for breach of contract, a claimant must first establish performance on its part of the contractual obligations imposed in the contract." *Marshall Construction, Ltd. v. Coastal Sheet Metal & Roofing, Inc.,* 569 So.2d 845, 848 (Fla. 1st Dist.Ct.App.1990).

In this proceeding, the Debtors were equally responsible for completing the tasks Plaintiff claims Defendant should have completed. Debtors failed to obtain construction liability bond as required under the Rehab Contract. (Pl.'s Ex. G1). Debtors also failed to satisfy mechanic liens under the terms of the Loan Contract. (*Id.*). Before each disbursement, Debtors signed all the Contractor's Affidavits verifying completion of construction at various stages of the renovations. (Pl.'s Ex. 26). Consequently, Plaintiff, standing the shoes of Debtors, cannot maintain a claim for breach of contract because Debtors did not perform their contractual obligations. Therefore, Plaintiff cannot maintain an action for breach of contract.

## B. Count II—Detrimental Reliance

Next, Plaintiff maintains that Debtors detrimentally relied on the Defendant's promises to renovate the Grothe Gardens and Mercedes Court complexes. Florida Supreme Court has ruled that the doctrine of promissory estoppel can be applied to enforce oral promises on which a promisee detrimentally relied, when the promise is definite, of a substantial nature, and established by clear and convincing evidence. *W.R. Grace & Co. v. Geodata Serv., Inc.,* 547 So.2d 919, 920 (Fla.1989).

The Court must first determine if Defendant's promise is definite, of a substantial nature, and can be established by clear and convincing evidence. Plaintiff states that Debtors were promised that the Grothe and Mercedes complexes would be renovated, and were urged not to rent to new tenants or renew old leases. Mr. Maahs, the Defendant's representative, testified that he told the Debtors that it would be better if both complexes were without tenants because the tenants would not receive relocation fees when the construction started. (Tr. 507–09, 531, 546). Mr. Maahs also wrote Debtors, advising them that the Defendant would be willing to rehabilitate the Grothe Gardens and Mercedes Court complexes, but can only do one complex at a time. (Pl.'s Ex. F17). Mr. Maahs' letter dated March 21, 1990 states, in relevant part, that: "We plan to assist you in the need to rehab both of the complexes, we just need to proceed with the *one* of your choice at this time." (*Id.*) (emphasis in original). In a Memorandum dated December 7, 1993 from William G. Mauzy, Coordinator of the Affordable Housing and Rehab Operations, to Mr. Jim McDonald, Chief of Property Safety, Defendant reiterated its intent to assist Debtors in the rehabilitation of the Grothe complex as soon as the Society Court project was completed. (Pl.'s Ex. F3). Therefore, Defendant made a definite promise to the Debtors to assist them in renovating the two complexes, the promise was of a substantial nature, and is established by clear and convincing evidence.

Next, is whether Defendant's promise to Debtors should be enforced. The Florida Supreme Court has ruled that: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by

enforcement of the promise. The remedy granted for breach may be limited as justice requires." *Id.* at 924 (adopting Restatement (Second) of Contracts § 90 (1979)). The supreme court further stated that the promisor should only be affected by reliance that he does or should foresee, and enforcement must be necessary to avoid injustice. *Id.*

In this proceeding, Debtors testified that they relied on the Mr. Maahs' statement not to re-rent and both complexes subsequently became vacant. (Tr. 56–57; 214–17). Defendant could have reasonably foreseen that the Debtors would have relied on their promise to rehabilitate the Grothe Gardens and Mercedes Court complexes. In reliance on those promises, the Debtors did not renew leases and did not rent to new tenants. As a result, the property became vacant, vandalized and one of the complexes was eventually demolished. Therefore, justice requires that Defendant's promise should be enforced.

Having determined that Debtors detrimentally relied on Defendant's promises, the Court must now decide the proper amount of damages. Florida case law states that the award of damages in a case utilizing the doctrine of promissory estoppel should be the amount necessary to avoid injustice. *Grace*, 547 So.2d at 924; *City of Cape Coral v. Water Services of America*, 567 So.2d 510, 513 (Fla. 2nd Dist.Ct.App.1990).

Plaintiff seeks damages for loss of rental income for the Grothe Gardens and Mercedes Court apartment complexes. For the Grothe Gardens complex, the estimated loss from rental income from January 1991 to July 1997 is $194,976.50. (Pl.'s Ex. 63). For the Mercedes complex, Plaintiff seeks damages for loss of rental income from January 1991 to July 1997 in the amount of $94,777.67. (*Id.*). Damages were calculated using a ten percent (10%) vacancy rate, deducting net operating expenses, and considering projected losses. (Tr. 206–08). Thus, Plaintiff claims a total amount of $289,754.17 of loss of rental income for both complexes.

Defendant contends that it has a right to setoff for any possible damages awarded as result of this proceeding against administrative expenses it filed in the amount of $53,884.12 in the main case. (Main Case Doc.

135). The Plaintiff agrees that the Defendant is entitled to setoff, but in an amount of fifteen percent (15%) of the amount the Court awards. (Adv. Rec. 66, at 12).

The Court concludes that damages should be calculated as follows:

| | | |
|---|---|---|
| $ | 194,976.50 | (Grothe Garden) |
| $ | 94,777.67 | (Mercedes Court) |
| $ | 289,754.17 | (sub-total for both complexes) |
| $ | − 43,463.13 | (15% Set-off) |
| $ | − 53,884.12 | (§ 503(b)(3) administrative expense) |
| $ | 192,406.92 | Total award of damages. |

The Court therefore awards damages in the amount of $192,406.92, which the Defendant should turn over to Plaintiff for the benefit of the estate.

Plaintiff also seeks attorneys' fees and costs. No evidence was presented on attorneys' fees and costs, and Court will not award attorneys' fees and costs to either side.

### C. Count III—Violation of the Automatic Stay

Finally, the Court addresses whether Defendant's violation of the automatic stay is within the exception of 11 U.S.C. § 362(b)(4). The relevant code sections provide that:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

. . . .

(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—

. . . .

> (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by governmen-

tal unit to enforce such governmental unit's police or regulatory power[.]

11 U.S.C. § 362(a)(1), (b)(1) (1994).

In this proceeding, it is not disputed that Defendant violated the automatic stay when it demolished Debtors' Grothe Garden complex on April 8, 1994 while Debtors were in bankruptcy and before their Chapter 7 discharge was granted. Thus, the threshold issue is whether Defendant's action is shielded by the exception to the automatic stay under 11 U.S.C. § 362(b)(4).

■ Although the purpose of the automatic stay is to give the debtor a breathing spell from creditors, the exception to the automatic stay recognizes that the government must be able to enforce law uniformly without regard to the debtor's position in bankruptcy court. *Brock v. Rusco Industries,* 842 F.2d 270, 273 (11th Cir.1988). The legislative history of subsection 362(b)(4) teaches that "this section is intended to be given an narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate." HR Rep. No. 595, 95th Cong., 1st Sess. 342 (1977) U.S.Code Cong. & Admin.News 1978, p. 5787.

■ In this case, the Defendant contends that it demolished the Grothe Garden complex because it was a safety hazard, which raises the issue of whether this is valid exercise of its police or regulatory power. The Court found no published cases on this issue in this circuit. However, the Sixth Circuit Court of Appeals has addressed the issue. The Sixth Circuit has ruled that "municipalities' actions in demolishing buildings were exercises of their police powers, and are excepted from automatic stay pursuant to § 362(a)(4)." *Javens v. City of Hazel Park et al. (In re Javens),* 107 F.3d 359, 370 (6th Cir.1997). *Javens* further held that the bankruptcy court was not required to inquire into circumstances of municipalities' proceedings before deciding that the automatic stay did not apply. *Id.* at 365. The Court adopts this position.

In this proceeding, the Grothe Gardens complex was condemned April 1991. (Pl.'s Ex. A). The first notice of condemnation was issued on March 26, 1992 by the City of Jacksonville, Department of Regulatory and Environmental Services, Property Safety Division. (Def.'s Ex. 3). On June 15, 1992, the Municipal Code Enforcement Board of the City of Jacksonville entered an Order imposing administrative fines and liens on the Grothe Gardens property. (Def.'s Ex. 5). On April 6, 1993, a second notice of condemnation was issued by the City of Jacksonville, Department of Regulatory and Environmental Services, Property Safety Division. (Def.'s Ex. 6). On May 3, 1993, the City of Jacksonville, Fire and Rescue Department, Fire Prevention Division issued a notice that the Grothe Gardens complex was a fire hazard. (Def.'s Ex. 7). The Defendant's action is an exception to the automatic stay pursuant to subsection 362(b)(4) because Defendant was enforcing its police powers when it demolished the Grothe Gardens complex.

### Conclusion

Plaintiff is entitled to $192,406.92 in damages for detrimental reliance. However, Plaintiff will not be awarded damages for breach of contract or violation of the automatic stay. The Court will enter a separate order consistent with these findings of fact and conclusions of law.