In re PMI–DVW REAL ESTATE HOLDINGS, L.L.P., an Arizona limited liability partnership, Debtor.

Maricopa County, a political Subdivision, et al.,
Plaintiff,

v.

PMI–DVW Real Estate Holdings, L.L.P., an Arizona limited liability partnership, Defendant.

Bankruptcy No. B–99–01969–PHX–RGM.
Adversary No. 99–00128.

United States Bankruptcy Court,
D. Arizona,
Phoenix Division.

Aug. 27, 1999.

Brian R. Winski, Michael G. Tafoya, Winski, Lustig & Tafoya, Phoenix, AZ, for debtor.

Debra Sirower, Jean Rice, Phoenix, AZ, Tamalyn E. Lewis, Ridenour, Swenson, Cleare & Evans, Phoenix, AZ, for Maricopa County.

ORDER REGARDING APPLICABILITY OF THE AUTOMATIC STAY TO MARICOPA COUNTY'S PROCEEDINGS TO CONDEMN DEBTOR'S PROPERTY THROUGH EMINENT DOMAIN; AND ORDER REGARDING THE POLICE AND REGULATORY POWER EXCEPTION TO THE AUTOMATIC STAY; AND ORDER REQUIRING THE PARTIES TO FILE A JOINT PRETRIAL STATEMENT WITHIN 30 DAYS

ROBERT G. MOOREMAN, Bankruptcy Judge.

This matter is before the Court pursuant to Maricopa County's Motion for Relief from the Automatic Stay and Debtor's Response thereto. Prior to the final hearing on the Motion for Relief from the Automatic Stay, the parties requested that the hearing be limited to the legal issues raised by the Motion for Relief from the Automatic Stay, including the Bankruptcy Court's jurisdiction, the issue of whether this was a "core" or "non-core" proceeding, and whether the County's condemnation proceedings were an exercise of its police and regulatory power which is excepted from the automatic stay.

A hearing was held on May 18, 1999 after which the matter was taken under advisement. After due consideration of the pleadings, the record herein, and under the present posture of the case, the Court finds and concludes the following in making its decision.

## PROCEDURAL HISTORY

1. On October 23, 1998, Maricopa County offered to purchase 1.469 acres of land owned by the Debtor and which is a portion of the approximately 38 acres of land owned by the Debtor in the subject area. The County offered to purchase the property for a total of $51,415.00, which equates to $35,000.00 per acre.

2. On November 2, 1998 the Debtor responded by letter and rejected the County's offer.

3. On November 4, 1998, the Maricopa County Board of Supervisors held a public hearing which resulted in a finding for the need of a realignment of the present Deer Valley Road and the creation of a county highway. The Board of Supervisors found the highway to be a public necessity.

4. On November 9, 1998 the County acknowledged receipt of the Debtor's letter rejecting the offer and again urged the Debtor to reconsider the County's offer of $51,415.00.

5. On February 4, 1999 the County filed a Complaint in Condemnation (Eminent Domain) in the Maricopa County Superior Court, *Maricopa County v. PMI–DVW Real Estate Holdings, L.L.P.*, case no. CV 99–01925. The Complaint sought to condemn 1.4773 acres of the Debtor's land.[1] On the same day, the County also filed an Application for Order of Immediate Possession, which sought the immediate possession of the subject property.

6. The Maricopa County Superior Court issued an Order to Show Cause requiring the Debtor to appear before that Court to show cause, if any, as to why the Application for Order of Immediate Possession should not be granted. The Superior Court set the Order to Show Cause hearing for February 24, 1999.

7. On February 24, 1999 the Debtor filed a voluntary Chapter 11 Bankruptcy petition and a Notice of Removal of the Condemnation litigation to the Bankruptcy Court. The filing of the Notice of Removal established the instant Adversary proceeding, ADV. No. 99–00128.

8. On March 2, 1999 Debtor filed its Answer and Counterclaim to the Condemnation Complaint

9. On March 25, 1999, Maricopa County filed a Motion to Remand and also filed a Motion for Relief from the Automatic Stay.

10. The County requested an accelerated hearing on the Motion to Remand.

11. The Bankruptcy Court held an accelerated hearing on April 5, 1999. At the hearing, the Court heard arguments from Debtor concerning the propriety of the condemnation and the facts surrounding the County's desire to realign Deer Valley Road. The Court also heard arguments concerning the remand. The Court consolidated the Motion for Relief from the Automatic Stay with the Adversary Proceeding on the Removed Condemnation Complaint and directed the parties to file a Joint Pretrial Statement. The Court also allowed the parties to file briefs concerning the issue of jurisdiction and/or the "core" and "non-core" issues.

12. On May 10, 1999, Maricopa County filed a Motion requesting that the Court use the scheduled final hearing on the Motion for Relief from Automatic Stay for purposes of hearing oral arguments on the jurisdictional issues.

13. On May 12, 1999, the Debtor filed a joinder to the County's Motion regarding the May 18, 1999 hearing.

14. On May 17, 1999 the Court entered the lodged order directing that the May 18, 1999 hearing was to be used for purposes of resolving the legal issues presented in the Adversary proceeding.

## THE BANKRUPTCY COURT'S JURISDICTION IN THESE PROCEEDINGS

▮ The Court finds and concludes that the United States Code, including the Bankruptcy Code,[2] provides a wide range of jurisdiction over property and assets of the Bankruptcy estate. Upon the filing of

---

1. The Court notes that at sometime between the County's initial offer to purchase Debtor's property and the filing of the Condemnation Complaint that the amount of land in question increased from 1.469 acres to 1.4773 acres.

2. See 11 U.S.C. § 101, *et seq.*

a Bankruptcy petition, an estate is automatically created which contains all of the legal or equitable interests that the Debtor possesses in property as of the commencement of the Bankruptcy case. See 11 U.S.C. § 541(a)(1). The Bankruptcy Court's jurisdiction extends to all property of the Bankruptcy estate, wherever such property is located. See, 11 U.S.C. § 541(a).

■ The Court finds and concludes that on February 24, 1999, when the Debtor filed the present Bankruptcy petition, that the property that includes the approximately 38 acres of land near Deer Valley Road was, and remains, property of the Debtor and is therefore property included in the Bankruptcy estate. The Court further finds and concludes that the subject 1.4773 acres of land which Maricopa County seeks to condemn is property of the Bankruptcy estate. The Court finds and concludes that it has subject matter jurisdiction over the property which the County is now seeking to condemn for the proposed realignment of Deer Valley Road.

### "CORE" vs. "NON–CORE"

■ The Bankruptcy Court recognizes that it is the County's position that the entire condemnation proceeding is a "non-core" proceeding because the condemnation is brought under Arizona state law. Pursuant to 28 U.S.C. § 157(b)(1), Bankruptcy Judges may "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 ..." Core proceedings include, but are not limited to: matters concerning the administration of the estate; orders to turn over property of the estate; motions to terminate, annul, or modify the automatic stay; order approving the use or lease of property of the estate; order approving the sale of property of the estate; and other proceedings affecting the liquidation of the assets of the estate. See 28 U.S.C. § 157(b)(2)(A), (b)(2)(E), (b)(2)(G), (b)(2)(M), (b)(2)(N), and (b)(2)(O). Bankruptcy Judges also

may hear a proceeding that is not a core proceeding, but which is otherwise related to a case under Title 11 of the United States Code; however the Bankruptcy Judge must submit proposed findings of fact and conclusions of law to the District Court, and the final order thereon shall be entered by the District Court. 28 U.S.C. § 157(c)(1). The parties may also consent to the Bankruptcy Judge entering final orders on matters related to a case under Title 11. 28 U.S.C. § 157(c)(2).

■ The Court finds and concludes that the issues presented in the present matter are core proceedings. Although the Court recognizes that the County's condemnation action is based on non-Bankruptcy, Arizona law, the Court finds and concludes that the matter involves property of the Bankruptcy estate and that the County's use of legal process is intended to remove property or assets from the Bankruptcy estate. The Court finds and concludes that the effect of an Immediate Possession Order and the condemnation of the subject property would be a forced sale upon property of the Bankruptcy estate.

Therefore, based on all of the foregoing, because the County is attempting through its state court proceedings to use, sell, or otherwise liquidate assets of the estate, the Court finds and concludes that this matter involves a core proceeding and that the Bankruptcy Court, pursuant to 28 U.S.C. § 157(b), may hear and determine this matter, and enter appropriate orders and judgments thereon.

### APPLICABILITY OF THE AUTOMATIC STAY

Maricopa County has argued that the Automatic Stay imposed by 11 U.S.C. § 362 does not apply to the condemnation proceedings because such proceedings are within the governmental police and regulatory power exception of § 362(b)(4). The Debtor argues that the governmental police and regulatory power exception does not apply to these facts because the Coun-

ty is not "exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction," which is the only applicable police powers exception remaining after Congress recently amended 11 U.S.C. § 362. The Debtor also argues that the County is abusing its powers under the facts of this case because the County is attempting to condemn the subject property for what amounts to a private use or for the benefit of a private entity. The Court finds and concludes that both the County and the Debtor have misinterpreted the applicable statute.

Except as specifically provided under the statute, 11 U.S.C. § 362(a) provides that the filing of a Bankruptcy petition under Title 11 of the United States Code operates as a stay, applicable to *all* entities of:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

11 U.S.C. § 362(a).

First, the Court finds and concludes that Congress did not amend the statute in such a way to only include enforcement of violations of the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction (the "Convention Prohibiting Chemical Weapons") as the only police or regulatory power exception to the automatic stay. On October 21, 1998 Congress amended subsections (b)(4) and (b)(5) of 11 U.S.C. § 362. Previously, subsection (b)(4) indicated that the filing of a Bankruptcy petition did not operate as an automatic stay:

under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

11 U.S.C. § 362(b)(4).

Subsection (b)(5) previously indicated that the filing of a Bankruptcy petition did not operate as an automatic stay:

under subsection (a)(2) of this section of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

11 U.S.C. § 362(b)(5).

Under the previous reading of section 362, the Ninth Circuit held that the police and regulatory power exceptions created under subsections (b)(4) and (b)(5) are not applicable to 11 U.S.C. § 362(a)(3) and therefore there is no exception that allows a government to obtain possession of property of the Bankruptcy estate or that allows

a government's attempt to exercise control over property of the Bankruptcy estate. Therefore, under that rationale, the automatic stay applied to the government, even if it was attempting to enforce its police or regulatory power, and the automatic stay prohibited the government from attempting to obtain possession or exercise control over property of the Bankruptcy estate. *See Hillis Motors, Inc. v. Hawaii Auto. Dealers Assoc.*, 997 F.2d 581, 590–91 (9th Cir.1993).

On October 21, 1998 Congress amended 11 U.S.C. § 362. Congress combined subsections (b)(4) and (b)(5) and added some important language. Subsection (b)(5) was deleted and the new subsection (b)(4) states that the filing of a Bankruptcy petition did not operate as an automatic stay:

> under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit or enforce such governmental unit's or organization's police or regulatory power. 11 U.S.C. § 362(b)(4) (Act of October 21, 1998).

■ The Court finds and concludes that subsection (b)(4) of 11 U.S.C. § 362 does not apply to only those situations where the Convention Prohibiting Chemical Weapons has been involved. Instead, the Court finds and concludes that Congress merely expanded and/or redefined the previous police and regulatory power exceptions to include any organization exercising authority under the Convention Prohibiting Chemical Weapons. The Court also finds and concludes that the

amendment to 11 U.S.C. § 362(b)(4) legislatively overruled the Ninth Circuit's holding in *Hillis Motors*, 997 F.2d at 590–91, that there is no governmental police or regulatory power exception to section 362(a)(3). Now, because the amended statute also includes an exception to section 362(a)(3), the police and regulatory power exception applies to acts by the government to obtain possession of property of the Bankruptcy estate or to exercise control over Bankruptcy estate property. Accordingly, the Court overrules and rejects the Debtor's interpretation that a government's police and regulatory power exception to the automatic stay applies only in situations where the governmental unit is acting under the Convention Prohibiting Chemical Weapons. The Court finds and concludes that the exception stated in 11 U.S.C. § 362(b)(4) applies whenever a governmental unit is exercising a valid and traditional police or regulatory power.

■ Second, the Court also finds and concludes that the police and regulatory power exception of 11 U.S.C. § 362(b)(4) does not apply to the facts of this case as argued by Maricopa County. Maricopa County has filed an action for condemnation of Debtor's property in the Arizona state courts. The County has argued that the action is an exercise of the County's power to obtain property by eminent domain. A governmental unit exercising such power may accomplish the taking of private property if the taking is for a public use. U.S. Const., amends. V, XIV; Ariz. Const. art. II, § 17. The Maricopa County Board of Supervisors found the proposed realignment of Deer Valley Road, and therefore the taking of Debtor's property was a "public necessity." However, the public use standard of a government's eminent domain power is different than the government's police and regulatory power.

■ The government's eminent domain power is different than the police or

regulatory power, and actions to acquire property by eminent domain are not excepted from the automatic stay under 11 U.S.C. § 362(b)(4). *Redevelopment Agency of the City of Long Beach, California v. Altamirco (In re Altamirco)*, 56 B.R. 199, 200–01 (Bankr.C.D.Cal.1986) (*citing Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984)). The United States Supreme Court has held that the public use requirement of eminent domain is "coterminous" with the government's police power. *Midkiff*, 467 U.S. at 240, 104 S.Ct. 2321. However, even though requirements under the eminent domain powers and the police or regulatory powers may be the same, or may share the same range of permissible uses and would be similar in scope, the two powers are not necessarily identical. *Altamirco*, 56 B.R. at 200. The standards to allow for a taking of private property pursuant to the power of eminent domain and for a taking of private property pursuant to a government's police and regulatory power is different. The standard for an eminent domain taking is whether the taking is for a public use; the standard for a regulatory taking is whether the taking substantially advances a legitimate state interest. *Chevron U.S.A., Inc. v. Cayetano*, 57 F.Supp.2d 1003, 1008 (D.Haw.1998).

■ The Court finds and concludes from the record herein, and the arguments presented, that there is a current Deer Valley Road that services the needs of the County in this area and that there is an existing right of way for the Deer Valley Road. However, the County has though its political process determined that the current roadway should be redirected across Debtor's property. The Court notes that the record in this case includes the Minutes from the Maricopa County Board of Supervisors November 4, 1998 meeting regarding the proposed Deer Valley Road realignment, attached hereto. The Board of Supervisors have made declarations and findings that the proposed roadway is in the best interests of Maricopa County and

that the proposed roadway is a public necessity. However, the Court also specifically notes that there is no mention of a specific public health, safety or welfare issue which would traditionally involve the government's police and regulatory power.

■ The Court has a duty to scrutinize the governmental unit's claims that it is acting under its police and regulatory power and to determine that a valid exception to the automatic stay exists, rather than simply assuming the police and regulatory power is involved because the governmental unit has made an appearance. *Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora (In re Corporacion de Servicios Medicos Hospitalarios de Fajardo)*, 60 B.R. 920, 932–33 (D.P.R.1986). The Court finds and concludes on this record that there has been no showing that the proposed condemnation of Debtor's property is an exercise in anything other than eminent domain, and there has been no showing that the proposed condemnation is a valid exercise of the County's traditional police or regulatory power.

■ The Court recognizes that traditionally in situations where there is an imminent health, welfare, or safety issue, that the government has a special interest in protecting its citizens and that the government may use its special police and regulatory power to afford such protection to its citizens. The exception allowed by 11 U.S.C. § 362(b)(4) allows a governmental unit to pursue actions to protect public health and safety, however Congress intended this exception to be given a narrow construction. H.R.Rep. No. 595, 95th Cong., 1st Sess. 342 (1977) U.S.Code Cong. & Admin.News 1978, p. 5787. An example of a situation where the automatic stay does not apply to a government's exercise of its power of condemnation has been noted in the case of *Manuel v. City of Jacksonville (In re Blunt)*, 210 B.R. 626 (Bankr.M.D.Fla.1997). In the *Blunt* case, the Chapter 7 Debtor owned and managed several rental properties, including an apartment complex that the City of Jack-

sonville demolished post-petition, and while the Debtor was protected by the automatic stay of 11 U.S.C. § 362. The City demolished the apartment complex because the property was condemned as a fire hazard. The Debtor was given notice of the proposed condemnation, and notice that the City had determined that the apartment complex was a fire hazard. The Bankruptcy Court in *Blunt* found that the City of Jacksonville's actions in violation of the automatic stay fell under the government's police and regulatory power exception. 210 B.R. at 634.

The Court finds and concludes on the record presented that Maricopa County has failed to show that the realignment of the existing Deer Valley road is a valid exercise of its police and regulatory power such that the County may continue to act to take possession of Debtor's property, which is property of the Bankruptcy estate, without violating the automatic stay imposed by 11 U.S.C. § 362.

## CONCLUSION

Therefore, based on the foregoing, and the record herein, the Court finds and concludes that the Debtor had an interest in the subject property at the time of the filing of the Bankruptcy petition. The Court also finds and concludes that the subject property is part of the Bankruptcy estate and that the County's attempt to condemn the property would effectively be a forced sale of property of the Bankruptcy estate, that the Bankruptcy Court has jurisdiction over this matter as a core proceeding and that the Court may hear and determine this matter and may enter such orders or judgments as necessary. The Court also finds and concludes that the County's efforts to condemn the subject property by eminent domain are prohibited by the automatic stay and that there has been no showing of a valid exception to the automatic stay under the County's police or regulatory power.

The Court notes that it present findings are based solely on the legal and jurisdic-

tional issues presented by the parties, and that the parties previously stipulated to limit the May 18, 1999 hearing to those issues. The Court's ruling does not affect the ability of the County to receive relief on either its Motion for Remand, or Motion for Relief from the Automatic Stay. The Court therefore directs the parties to file a joint pretrial statement on all remaining issues regarding the remand and/or relief from stay within 30 days. The parties are directed to include a statement of all material issues which are not in dispute, to separately list all issues of fact or law which are disputed, and the parties respective positions on each issue. Further the parties are directed to include an estimate of the time necessary to try the remaining issues. Upon the filing of the *joint* pretrial statement, the Court will set the remaining matters for trial.

 The Court finally notes that 11 U.S.C. § 362(b)(4) only provides an exception to the imposition of the *automatic* stay in Bankruptcy case. The Court finds and concludes that even if the exception had been valid in this case, which it was not, that the Court could have imposed a separate stay through the broad powers granted to the Court under 11 U.S.C. § 105 to protect the property or interests of the Bankruptcy estate and thereby prevent the government from using its police or regulatory power. The Bankruptcy Courts have the power to prevent a government unit's bad faith exercise of its police or regulatory power against the Bankruptcy estate. *Javens v. City of Hazel Park (In re Javens)*, 107 F.3d 359, 366 (6th Cir.1997).

Accordingly,

IT IS ORDERED that the automatic stay imposed by 11 U.S.C. § 362 applies to the Maricopa County's proceedings to condemn Debtor's property through eminent domain;

IT IS FURTHER ORDERED that Maricopa County's claim of a police and

regulatory power exception to imposition of the automatic stay is hereby overruled;

IT IS FURTHER ORDERED directing the parties to file a *joint* pretrial statement within 30 days on all remaining issues regarding the County's Motion for Remand and Motion for Relief from the Automatic Stay. The parties are further directed to include a statement of all material issues which are not in dispute, and separate list all issues of fact and law which are in dispute and to state the parties respective positions on each disputed issue; the parties should also include an estimate of the amount of time necessary to try the remaining issues;

IT IS SO ORDERED.

### APPENDIX

### COUNTY OF MARICOPA

State of Arizona

Office of the Clerk

*I, Fran McCarroll, clerk of the Board of Supervisors do hereby Certify that the attached is a true and correct excerpt from the minutes of the meeting of the Board of Supervisors held November 4, 1998:*

### *ROAD DECLARED (ROAD FILE NO. 5043)*

Motion was made by Supervisor Wilcox, seconded by Supervisor Stapley, and unanimously carried that the following resolution be adopted:

WHEREAS, pursuant to A.R.S. §18-201 through 18-203, on the 7th day of October, 1998, the County Engineer and others filed with the Board of Supervisors of Maricopa County, Arizona, a petition praying the Board to establish, open and declare as a county highway the following described lines, to-wit:

A roadway lying within the East 50 feet of the Southeast quarter and south of Deer Valley Drive, in Section Eighteen (18), Township Four (4) North, Range One (1) West of the Gila and Salt River Base and Meridian, Maricopa County, Arizona.

Said roadway also known as Reems Road, from South line of said Section 18 (being the alignment of Deer Valley road), north to Deer Valley Drive, lying within Supervisorial District No. Four (4) and within the unincorporated area.

WHEREAS, the day and hour set by the Board for a public hearing on said petition has arrived, and notice of said hearing has been given to the public by advertising once a week for two consecutive weeks in the Record Reporter; and

WHEREAS, no objections to the establishment, opening and declaration of said highway have been filed; and

WHEREAS, the Board believes that the granting of said petition and the establishment, opening and declaration of the highway as prayed for in said petition, are for the best interests of Maricopa County, and said highway is a public necessity; NOW, THEREFORE,

BE IT RESOLVED that there is hereby established, opened and declared a county highway, more fully set forth hereinabove, and the County Engineer is hereby directed to make a plat of the survey of said highway and cause the same to be recorded in the Office of the County Recorder of Maricopa County as provided by law.

BE IT FURTHER RESOLVED that the Board accept any right-of-way or property donated to the State or County for said highway. The Board hereby accepts all U.S. Patent easement reservations, right-of-way or properties along this alignment into the Department of Transportation's Highway system.

BE IT FURTHER RESOLVED that the County Engineer be directed and authorized, and he is hereby so directed and authorized, to negotiate with owners of parcels of private property required for the right-of-way of said public highway with the view of obtaining for Maricopa

County said private property, subject to the ratification and approval of this Board.

BE IT FURTHER RESOLVED that the County Attorney be directed and authorized, and he is hereby directed and authorized, to initiate and prosecute actions and proceedings in the manner required by law to condemn all property required for right-of-way which cannot be obtained by donation or purchase.

DATED this 4th day of November, 1998.